Alice M. HARPER, etc., Plaintiff,

v.

NEW JAPAN SECURITIES INTERNA-
TIONAL, INC., et al., Defendants.

No. CV 81–6564 AWT.

United States District Court,
C. D. California.

Aug. 18, 1982.

Stephen P. Oggel, Ruben B. Brooks, Ronald W. Noya, Sullivan & Jones, James Howard, San Diego, Cal., for plaintiff.

Bruce A. Bevan, Jr., Marilyn B. O'Toole, Musick, Peeler & Garrett, Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

TASHIMA, District Judge.

Plaintiff Alice M. Harper brings this action against defendants New Japan Securities International, Inc., New Japan Securities Co., Ltd. (collectively "New Japan") and New Japan's employees, Messrs. Nakanishi, Miyake, Bito, Shimidzu and Oshima, for violations of federal securities laws, the National Association of Securities Dealers ("NASD") suitability rules and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Title IX of the Organized Crime Control Act of 1970. 18 U.S.C. § 1961 *et seq.* State claims based on breach of fiduciary duty and fraud are also alleged.[1] New Japan has moved to dismiss plaintiff's RICO claim on the ground that it fails to state a claim upon which relief can be granted. Rule 12(b)(6), F.R.Civ.P.

The following allegations form the basis of plaintiff's claims. New Japan Securities International, Inc., is a Delaware corporation doing business as a securities broker/dealer in Los Angeles. New Japan Securities Co., Ltd., is a corporation centered in Tokyo, Japan, and is the parent of New Japan Securities International, Inc. In 1975, Harper opened accounts at both the Los Angeles and Tokyo offices of New Japan. Shortly thereafter, she opened a custodial account for her nephew at the Los Angeles office. Harper alleges that, beginning in 1978, defendants churned her custodial account through excessive purchases and sales. Upon discovering defendants'

alleged misconduct, plaintiff filed this action seeking treble damages and one million dollars in punitive damages.

On March 29, 1982, defendants moved to dismiss plaintiff's RICO claim on the grounds that she had inadequately pleaded substantive violations of the statute under 18 U.S.C. § 1962 and that she had failed to allege how she was injured in her "business or property by reason of" a violation of RICO. 18 U.S.C. § 1964(c). The RICO claim was dismissed, but plaintiff was granted leave to amend.

An amended complaint was filed and defendants have again moved to dismiss on the ground that plaintiff has not alleged that she suffered any racketeering-type injury. According to defendants, the only injury alleged in the amended complaint is that which stems from the alleged securities violations and breaches of fiduciary duty. While violation of the securities laws is a predicate offense which constitutes a "racketeering activity" under RICO, 18 U.S.C. § 1961, defendants contend that, to state a claim under the RICO treble damages provision, a plaintiff must allege injury which is attributable to violation of RICO.

The issue raised by defendants' motion is one of first impression in this Circuit, although it has been the subject of several recent district court opinions in other circuits, as well as law review commentary.[2] While certain common threads of analysis run through the cases, the decisions are far

---

1. Jurisdiction is based upon § 22(a) of the Securities Act of 1933, as amended, 15 U.S.C. § 77v(a); § 27 of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78aa; § 901(c) of the Organized Crime Control Act of 1970, 18 U.S.C. § 1961 *et seq.*; 18 U.S.C. §§ 1341 & 1343; 28 U.S.C. §§ 1331 & 1337; and principles of pendent jurisdiction.

2. Cases include *Van Schaick v. Church of Scientology,* 535 F.Supp. 1125 (D.Mass.1982); *Waterman Steamship Corp. v. Avondale Shipyards, Inc.,* 527 F.Supp. 256 (E.D.La.1981); *Landmark Sav. & Loan v. Rhoades (Hornblower & Co.),* 527 F.Supp. 206 (E.D.Mich.1981); *Spencer Cos. v. Agency Rent-A-Car, Inc.,* [Current Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,361 (D.Mass.1981); *Adair v. Hunt Int'l Resources Corp.,* 526 F.Supp. 736 (N.D.Ill.1981);

*North Barrington Dev. Inc. v. Fanslow,* 547 F.Supp. 207 (N.D.Ill.1980). Law Review commentary includes Note, *Civil RICO, The Temptation and impropriety of Judicial Restraint,* 95 Harv.L.Rev. 1101 (1982) ("*Civil RICO*"); *Comment, Reading the "Enterprise" Element Back into RICO, Sections 1962 and 1964(c),* 76 Nw.L. Rev. 100 (1981); Blakely & Gettings, *Racketeer Influence & Corrupt Organizations (RICO): Basic Concepts—Criminal & Civil Remedies,* 53 Temp.L.Q. 1009 (1980). For an excellent and heavily annotated analysis of the legislative history of RICO, see Cornell Institute on Organized Crime, Techniques in the Investigation and Prosecution of Organized Crime (G. Robert Blakely ed.) (1980) ("*Techniques*").

from uniform. In light of the lack of binding precedent, the Court has reviewed the legislative history of RICO, as well as the decided cases and the commentary, in an effort to ascertain the proper construction to be given to § 1964(c). I conclude, for the reasons set forth below, that a RICO plaintiff must allege some injury which is attributable to or occurred "by reason of" a violation of RICO. Since plaintiff, after opportunity to amend, has made no such allegation, defendants' motion to dismiss should be granted.

## I. RICO: POLICY AND MECHANICS

RICO is primarily a criminal statute aimed specifically at curtailing the infiltration of business enterprises by organized crime. As early as 1950,[3] Congress was aware that members of organized crime, through infiltration of business enterprises, were able to obtain a "legitimate" source of income and, therefore, to conceal more effectively income obtained from unlawful activities. By enacting the Organized Crime Control Act of 1970, Congress sought to eradicate "organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." 84 Stat. at 923 (Statement of Findings and Purpose).

RICO provides substantial criminal penalties, 18 U.S.C. § 1963, harsh civil remedies which may be sought by the government, 18 U.S.C. § 1964(a) & (b), and a private right of action for treble damages to anyone injured "by reason of" a violation of the Act. 18 U.S.C. § 1964(c). *Civil RICO*, at 1101.

■ The substantive provisions of RICO prohibit the following activities:

(1) The use of income or proceeds from a pattern of racketeering activity by a principal in that activity to acquire an interest in or to establish an enterprise engaged in interstate commerce. § 1962(a).

(2) Acquisition of an interest in or control of an enterprise engaged in interstate commerce through a pattern of racketeering activity. § 1962(b).

(3) Operation of an enterprise engaged in interstate commerce through a pattern of racketeering activity. § 1962(c).

(4) Conspiracy to commit any of the above activities. § 1962(d).

Racketeering activity consists of a wide range of both federal and state offenses, ranging from bribery, 18 U.S.C. § 201, to any offense involving fraud in the sale of securities. 18 U.S.C. § 1961(1). A "pattern" of racketeering activity requires at least two acts of racketeering activity within ten years of each other, one of which must have occurred after the effective date of the statute, October 15, 1970. Each act of criminal activity is counted as an act of racketeering activity, even if numerous acts arise out of the same episode. *United States v. Weatherspoon*, 581 F.2d 595, 601–02 (7th Cir. 1978) (each mailing in furtherance of scheme to defraud counts as an act of racketeering activity).

The breadth and generality of RICO is apparent from the face of the statute. Read expansively, § 1964(c) would seem to permit every plaintiff who can allege the commission of two predicate acts to bring a cause of action for treble damages. The implications of such a result lead inevitably to the question of what Congress intended when it enacted § 1964(c).

## II. LEGISLATIVE HISTORY OF RICO

In the early stages of its development, RICO was conceived as a supplement to the antitrust laws. The Kefauver Committee, which in 1950 disclosed the problem of the infiltration of business by organized crime, noted that once infiltration had occurred, criminal methods were used to create monopolies and unfair competition. S.Rep.No. 2370, 81st Cong., 2d Sess. 16 (1950). In 1967, a Presidential Commission recom-

---

**3.** S.Rep.No.2370, 81st Cong., 2d Sess. 16    (1950).

mended the adoption of regulatory measures to control infiltration by organized crime, and in so doing, noted the value of antitrust type remedies. President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 190, 208 (1967).

In response to the Commission's recommendations regarding infiltration by organized crime, the 90th Congress introduced two bills. S. 2048 proposed an amendment to the Sherman Act prohibiting the investment or business use of unreported income.[4] *Techniques*, at 72. S. 2049 was a bill independent of, but parallel to, the Sherman Act which would have allowed injunctive relief to the government and third parties, damages and costs to the government, and treble damages to the victims.[5]

These attempts to apply antitrust type statutes to organized crime were referred to the Senate Committee on the Judiciary, 113 Cong.Rec. 18007 (1967), but no action was taken. *Techniques*, at 78. The Antitrust Section of the American Bar Association took the position that RICO should be separated from the existing body of antitrust law. House Hearings on S. 30, 91st Cong., 2d Sess. 149 (1970). Several reasons were advanced for this position. First, the Antitrust Section believed that it was undesirable to co-mingle criminal enforcement goals with the goals of regulating competition. Second, litigants seeking to bring treble damage actions under RICO would be subject to stringent standing to sue and proximate cause requirements applicable in the antitrust context. Finally, it appeared undesirable to create the possibility that case law governing RICO actions, which might be heavily weighted in favor of the private citizen, would be transferred to the antitrust context. *Id.*

The 91st Congress continued the efforts of the 90th Congress to enact legislation aimed at curtailing infiltration of business by organized crime. Taking a somewhat broader approach, the Senate drafted an expansive criminal law reform statute covering general areas such as gambling, grand juries, immunity and recalcitrant witnesses. *Techniques*, at 79. The Senate, perceiving that the creation of a private treble damages action would necessarily require the resolution of complex legal issues such as standing to sue, proximate cause and statute of limitations, dropped the treble damages provision from the Act. *Id.* at 81–82, n.57.

The Senate bill was then sent to the House. While the House embraced the principle of the legislation, it introduced numerous parallel bills which varied in certain respects from the Senate version. The treble damages provision was re-introduced into the legislation. Notwithstanding commentary on the immense scope of the bill, the House declined to elaborate on the potential legal issues associated with the private treble damages provision. *Id.* at 97, nn.88, 90.

On October 12, 1969, the bill, as amended by the House, was returned to the Senate. Due to the election recess approaching in two days and the fact that only 29 working days remained until the end of the session, the Senate was faced with the choice of concurring with the House version, 116 Cong.Rec. 36296 (1970), or facing the likely prospect that the bill would die due to the expiration of the session. See 116 Cong. Rec. 36292–96, 44640 (1970); *Techniques*, at 104. The House version, including the treble damages provision, was adopted.

### III. CASES CONSTRUING THE RICO TREBLE DAMAGES PROVISION

As a result of Congress' perception that innovative and far-reaching legislation was required to combat infiltration by organized crime, the RICO statute is strikingly broad. As the Supreme Court noted in *United States v. Turkette*, 452 U.S. 576, 587, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981), Congress, in the face of numerous objections, proceeded to enact RICO, "knowing that it would alter somewhat the role of the Feder-

---

4. S. 2048, 90th Cong., 1st Sess. (1967), reprinted in part in *Techniques*, at 72–73.

5. S. 2049, 90th Cong., 1st Sess. (1967), reprinted in part in *Techniques, supra*, at pp. 73–77.

al Government in the war against organized crime and that the alteration would entail prosecutions involving acts of racketeering that are also crimes under state law." In light of the intended breadth of RICO, the Supreme Court in *Turkette* rejected an appellate court's limited interpretation of the term "enterprise."[6] The Court refused to adopt this narrowing construction because it departed from the statutory language, 452 U.S. at 587, 101 S.Ct. at 2530, and because it would have placed whole areas of organized criminal activity outside the substantive reach of RICO. *Id.* at 589, 101 S.Ct. at 2531.

The question of whether some standing or proximate cause requirements should be imposed on plaintiffs seeking to recover treble damages under RICO, however, is analytically different from the substantive limitations sought to be imposed by the appellate court in *Turkette*. *Cf. Blue Shield v. McCready*, —— U.S. ——, —— ——, 102 S.Ct. 2540, 2547–48, 73 L.Ed.2d 149 (1982) (restrictions on § 4 of the Clayton Act analytically distinct from question of which persons have injuries too remote to give them standing to sue). Thus, several district courts, although aware of the strong policy favoring a liberal interpretation of RICO, have construed the treble damages provision more narrowly than a broad reading of the provision would suggest. These courts, relying on legislative history, parallels to antitrust law and policy considerations, have held that treble damages should not be available to plaintiffs whose sole injury stems from the predicate acts of racketeering.[7]

The near identity of language between § 1964(c) and § 4 of the Clayton Act, 15 U.S.C. § 15, is a factor which has been highly significant to those courts which have adopted a narrowing construction of RICO's treble damages provision. *See, e.g., Van Schaick v. Church of Scientology, supra; Waterman Steamship, supra,* 527 F.Supp. at 258; *Landmark Savings & Loan, supra,* 527 F.Supp. at 208. The *Landmark* court relied heavily on the Supreme Court's decision in *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), in which, in an antitrust context, the Court stated,

"for plaintiffs to recover treble damages on account of § 7 violations, they must prove more than injury causally linked to an alleged presence in the market. Plaintiffs must prove *anti-trust* injury, which is to say injury of the type the anti-trust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anti-competitive effect either of the violation or of anti-competitive acts made possible by the violation. It should, in short, be the type of loss that the claimed violations ... would be likely to cause."

*Id.* at 489, 97 S.Ct. at 697 (emphasis in original). While the court in *Landmark, supra,* did not construe RICO as requiring a competitive injury, as that term is understood in the antitrust context, it held that to have standing to bring a RICO treble damages action, a plaintiff must allege that he has suffered a "racketeering enterprise injury." The court defined this injury, as follows:

"A 'racketeering enterprise injury' might occur, for example, if a civil RICO defendant's ability to harm the plaintiff is enhanced by the infusion of money from a pattern of racketeering activity into the enterprise."

---

**6.** *United States v. Turkette,* 632 F.2d 896 (1st Cir. 1980).

**7.** At least two cases have adopted a narrowing construction on other legal theories. In *Barr v. WUI/TAS, Inc.,* 66 F.R.D. 109 (S.D.N.Y.1975), the court held that the plaintiff was required to prove that the defendant was tied to organized crime. Such a limitation has been explicitly rejected in this Circuit. *United States v. Campanale,* 518 F.2d 352, 363–64 (9th Cir. 1975),

*cert. denied,* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976).

*Spencer Cos. v. Agency Rent-A-Car, Inc.,* [Current Transfer Binder] Fed.S.L.Rep. (CCH) ¶ 98,-361 (D.Mass.1981), seems to require infiltration of a legitimate business enterprise. The opinion does not explicitly set forth a standing requirement because, on the facts of that case, it was apparent that plaintiffs' injuries stemmed directly from defendants' infiltration through a pattern of racketeering activity.

527 F.Supp. at 209. Noting that the case before it revealed no possible racketeering activity, the court dismissed the plaintiff's RICO claim.

Another justification for dismissal was suggested in *Waterman Steamship Corp., supra*, 527 F.Supp. at 260. There, the court granted summary judgment on the RICO claim on the ground that the history of the statute revealed a clearly expressed legislative intent that RICO should apply only to actions involving organized crime activities, and not to everyday civil actions like those involving private litigants with no relation to organized crime.

Finally, the court in *North Barrington Dev. Inc., supra*, required both a competitive injury and some allegation as to how the plaintiff was injured by reason of a § 1962 violation. The court reasoned that the purpose of the Act was to give law enforcement another tool with which to combat infiltration of legitimate businesses by racketeering influences and not to award treble damages for a breach of contract or common law fraud where the distinctive RICO violations did not contribute to plaintiff's injury.

The cases relied upon by plaintiff in support of a broad construction of the RICO treble damages provision do not address the issues presented by this case. *See Hellenic Lines, Ltd. v. O'Hearn*, 523 F.Supp. 244 (S.D.N.Y.1981) (rejecting argument that because plaintiff had "benefitted" from racketeering activity, it had sustained no "injury"); *Parnes v. Heinhold Commodities, Inc.*, 487 F.Supp. 645 (N.D.Ill.1980) (rejecting argument that criminal conviction was a prerequisite to violation of § 1962(c)).[8] While *Hellenic Lines* and *Parnes* contain broad language, they are of little help in deciding the proper construction of § 1964(c).

## IV. STANDING AND INJURY

■ Having considered both the legislative history and the scant case law, I conclude that a plaintiff must allege some injury "by reason of a violation of § 1962" in order to have standing to bring an action for treble damages under RICO. That is, a plaintiff must allege not only injury from the predicate offenses, but injury of the type the RICO statute was intended to prevent.

The requirement that a plaintiff allege some sort of racketeering injury is entirely consistent with the legislative history of the statute. It is clear that Congress realized that a standing or proximate cause requirement was necessary with respect to the treble damages provision, yet, for unknown reasons, no guidance was provided. While in the early stages of RICO's development the ABA Antitrust Section cautioned against the importation of the antitrust proximate cause and standing requirements, those comments merely point up the need to evaluate the rules governing RICO in light of the unique purpose and policy of the statute.

■ The requirement that a plaintiff allege some injury "by reason of a violation of § 1962" is more than a direct transference of antitrust principles to the RICO context. Rather, it is an analogy supported by the fact that the language of § 1964(c) is nearly identical to § 4 of the Clayton Act. Congress, which originally envisioned RICO as an antitrust statute, was not unaware of this similarity; yet, it retained the language long after it had decided that the Organized Crime Control Act should be enacted as an independent statute. Thus, analogy to antitrust law is the most logical point of departure in fashioning a well-reasoned construction of § 1964(c).

■ While the analyses of this issue in the opinions written to date are not uniformly persuasive, several important points emerge from those decisions. Congress could not have intended to provide treble damages causes of action to persons whose only injury stems directly from the predicate acts alone. It is simply incomprehensi-

---

**8.** Other cases holding that a claim under § 1964(c) is not conditioned on a criminal conviction include *Heinhold Commodities Inc. v. McCarty*, 513 F.Supp. 311 (N.D.Ill.1979); *Farmers Bank v. Bell Mortgage Corp.*, 452 F.Supp. 1278 (D.Del.1978).

ble that a plaintiff suing under the securities laws would receive one-third the damages of a plaintiff suing under RICO for the same injury. *But see Civil RICO,* at 1104. While RICO utilizes and sometimes expands upon the offenses designated as racketeering activities, there is no evidence that it was meant to pre-empt or supplement the remedies already provided by those statutes which define a predicate RICO offense. *United States v. Forsythe,* 560 F.2d 1127, 1135 (3d Cir. 1977) (RICO not designed to punish state law violations; rather, the impact on interstate commerce of conduct which meets RICO's definition of racketeering activity); *Schaick v. Church of Scientology, supra* (RICO not intended as remedy for consumer fraud); *Adair v. Hunt Int'l Resources Corp., supra* (Congress did not envision RICO as an alternative and cumulative remedy for securities fraud).

Thus, the requirement that the injury to be redressed occur "by reason of" a violation of § 1962 is the most meaningful limitation which can be imposed on § 1964(c). Only if this causal connection exists will the policies and purposes of RICO be served by permitting a private right of action. This construction, while avoiding the imposition of the antitrust requirement of "competitive injury," recognizes the similarities between the RICO treble damages provision and § 4 of the Clayton Act. In light of Congress' failure to provide any direction in determining the rules of standing appropriate to the RICO treble damages provision, the antitrust analogy is the construction of the statute which is most likely to reflect Congress' understanding of the words "by reason of."

Here, the amended complaint, liberally construed, cannot be read as alleging an injury "by reason of" a violation of RICO. At best, the injury alleged arises only by reason of the predicate securities law violation. The RICO allegations add nothing to the substance of the claim. Plaintiff's RICO claim must, therefore, be dismissed.

ORDER

For the foregoing reasons, it is ordered that plaintiff's RICO claim is dismissed without further leave to amend. Defendants are granted 30 days from the date of this Order within which to answer the remaining claims in the amended complaint.