**WASTE RECOVERY CORPORATION and Quanta Holding Corporation, Plaintiffs,**

v.

**Russell W. MAHLER, Portland Holding Corporation, Hudson Oil Refining Corporation, Edgewater Terminal, Inc., Casco Equipment Corporation, Northeast Oil Service of Syracuse, Inc., Polar Industries, Inc., and Oil Transfer Corporation, Defendants.**

**No. 82 Civ. 3741 (WK).**

United States District Court, S.D. New York.

July 15, 1983.

Skadden, Arps, Slate, Meagher & Flom by Thomas J. Schwarz, New York City, for plaintiffs.

Austrian, Lance & Stewart by Richard B. Cooper, New York City, for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

### BACKGROUND

Plaintiffs are two corporations which, by virtue of their place of incorporation and their principal place of business are citizens both of Delaware and Pennsylvania. This is an action brought against an individual defendant, Russell Mahler (a Florida citizen), and seven of his wholly-owned corporations, five of which are—like plaintiffs—citizens of Delaware. Defendants were in the waste-oil re-refining business, and had sold to plaintiffs certain re-refining plants which, so plaintiffs supposed, would allow them also to enter that business. The complaint alleges that, unbeknownst to plaintiffs, Mahler had conducted his business activities through a pattern of criminal violations which included mail fraud, improper disposal of chemical waste, bribery of state officials, etc. As a result of these wrongdoings Mahler and a confederate, Kenneth Mansfield, have plead guilty to various crimes in state and federal courts. Mahler's plea in a Pennsylvania state court led to a one-year prison sentence which he was serving at the time this action was filed.

Plaintiffs allege that these improper (and undisclosed) practices resulted in their be-

ing unable to obtain the government permits required to operate the newly-acquired plants. Accordingly, the corporation organized to operate the new venture, Quanta Resources (not a party to this action), went into bankruptcy.

The complaint states three counts: Count I is a civil claim against all defendants under the RICO chapter of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961–68; Count II seeks to enforce against defendant Mahler a right of rescission contained in the contract of sale; and Count III seeks the same relief as does Count II, but against all defendants. The case is before us on defendants' motion to dismiss, which motion we deem—the parties having submitted matters outside the pleadings—to be one for summary judgment. Defendants argue, first, that plaintiffs have no standing to sue because they only suffered the reduction in the value of their shares of Quanta Resources. They argue, furthermore, that the complaint fails to state a cause of action for recovery under the civil provisions of RICO. Should the RICO claim be dismissed, it is argued, finally, that we lack an independent basis of subject-matter jurisdiction to entertain the remaining (state law) Counts.

## DISCUSSION

 We discard at the outset those of defendants' arguments which turn on plaintiffs' lack of standing (as "mere" shareholders of Quanta Resources) and on the alleged Pennsylvania citizenship of defendant Mahler. As to the former argument, it is apparent that the allegations in the complaint and the very terms of the contract of sale support the contention—or raise, in this connection, an issue of material fact—that there is, at least a *direct* (contractual) relation between the parties, which relation is altogether more substantial than that found wanting in cases like *Vincel v. White Motor* (2d Cir.1975) 521 F.2d 1113 (shareholder may not sue to redress damage done to him merely by virtue of a decline in value of his stock), or *Schaffer v. Universal Rundle, et al.* (5th Cir.1968) 397 F.2d 893 (same) (statu-

tory claim). The possibility of such relation, whether or not it is ultimately proven at trial, affords plaintiffs the necessary standing to sue. *Fifty States Management Corp. v. Niagara Perm. S & L Assn.* (4th Dep't 1977) 58 A.D.2d 177, 396 N.Y.S.2d 925, 927. *See also Buschmann v. Prof. Men's Assn.* (7th Cir.1969) 405 F.2d 659, 661–62; *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.* (N.D.Ill.1982) 550 F.Supp. 1199, 1203–04. As to the latter argument, we reject the contention that defendant Mahler is a Pennsylvania citizen by virtue of his stay in a Pennsylvania prison, there being no suggestion of such "truly exceptional circumstances" as would warrant overcoming the presumption that he retained his preincarceration domicile. *See Jones v. Hadican* (8th Cir.) 552 F.2d 249, 250–51, *cert. denied* (1977) 431 U.S. 941, 97 S.Ct. 2658, 53 L.Ed.2d 260.

 The parties have, justifiably, expended most of their efforts in addressing the question whether or not the complaint properly alleges the right to recover under the civil provision of RICO. We think it does not. The submissions by both sides have been numerous, exhaustive, and highly competent. However, the incoherence in the state of applicable law disclosed by the parties' and our own research, leaves us—when all the legal arguments have been absorbed—much in the same predicament Justice Stewart must have found himself when concurring in *Jacobellis v. Ohio* (1964) 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793. To paraphrase his unusually applicable words: "I know [a civil RICO violation] when I see it, and the [one alleged] in this case is not that."

The focus of inquiry is, in our view, whether the plaintiffs have suffered injury "BY REASON OF" a racketeering enterprise, within the meaning of 18 U.S.C. § 1964(c). Courts have fashioned a great number of "novel theories" and "conflicting tests" to answer the foregoing question with a view to limiting the reach of otherwise limitless statutory language. *See, e.g.,* B. Tarlow, *RICO Revisited,* 17 Georgia L.Rev. 291, 304–05 (1983). We do not pro-

pose to fashion yet another "general" test which disposes of *this* case, but of no other. In no developing area of law can it be said more certainly that "general propositions do not decide concrete cases." *Lochner v. New York* (1905) 198 U.S. 45, 76, 25 S.Ct. 539, 551, 49 L.Ed. 937 (Holmes, J.). We only observe that plaintiffs were sold a "lemon" which they would not have bought had they been aware of the way Mahler ran his business. Their injury was "by reason of" Mahler's failure to advise them about the true nature of his activities—a fraud. The business that was sold may have been operated as a "racketeering enterprise," but this does not establish that such conduct was the proximate cause of plaintiff's injuries. *See, e.g., Minpeco v. Conticommodity Services* (S.D.N.Y.1983) 558 F.Supp. 1348, 1350; *Moss v. Morgan Stanley* (S.D.N.Y.1983) 553 F.Supp. 1347, 1360–62; *Harper v. New Japan Securities* (C.D.Ca.1982) 545 F.Supp. 1002, 1008.[1]

The foregoing would ordinarily result in our dismissing Count I—the civil RICO claim against all defendants. Such result, however, would not, at this stage, be prudent. The Court of Appeals may wish soon to address the question of what limits, if any, should be imposed on the reach of civil RICO liability. Should the Court decide to do so in this case, it would be better served by a more complete record. Rounding off the record should, of course, not be accomplished at the "expense" of parties that could earlier have been relieved from the burdens of litigation, or by sustaining unsound claims which might lead to the introduction of otherwise barred evidence. We are persuaded, however, that such is not the case here. First, in light of Mahler's and Mansfield's guilty pleas, the additional proof peculiar to the civil RICO claim is unlikely to impose a significant burden on plaintiffs. Conversely, such evidence would, it seems to us, be admissible—at least for background—on the viable contractual (or possible fraud) claims. The existence of the RICO claim against all the defendants is crucial, to be sure, in supporting pendent jurisdiction as to the defendants named in Count III, with the possible exception of Mahler, Edgewater Terminals, and Northeast Oil. *See* Fed.R.Civ.P. 19. It is our view, however, that the continued presence of the remaining five corporate defendants is of no practical moment.

## CONCLUSION

Defendants' motion to dismiss Count II is denied. It is our present intention to dismiss Count I at the close of the evidence. Count III will, thereafter, survive as against those defendants, if any, over whom we may have an independent basis for subject matter jurisdiction. Should our (unsupported) view of the "practicalities" of this litigation be proven materially incorrect, we will entertain an application to dismiss Count I at an earlier stage.

A conference will be held on *July 28, 1983 at 9:30 A.M. in Courtroom 619* to discuss the progress of this litigation.

---

1. We arrive at this conclusion fully aware that, for various reasons, the opposite result might well have been reached without doing undue violence to an inconsistent mass of precedent or to a legislative history which is altogether obscure on the precise question before us. First, it is apparent that the terms "by reason of" are sufficiently broad plausibly to extend the chain of causality of plaintiffs' injuries to the pattern of racketeering which, it is alleged, Mahler failed to disclose. Second, a reasonable (though not, ultimately, persuasive) argument could be made to distinguish cases such as *Minpeco, Moss,* and *Harper, supra,* on the grounds that those are securities cases which do not share the patina of criminality associated with the case at bar. Third, it is clear that the effort—illustrated by the foregoing cases— to impose some limitation on the reach of civil RICO liability has not met with uniform approval. *See, e.g.,* Note, *Civil Rico: The Temptation and Impropriety of Judicial Restriction,* 95 Harv.L.Rev. 1101 (1982). In this connection, our implicit premise that "ordinary" business fraud was not the intended object of civil RIC · liability, is—like almost any other statement in this area—not a universally shared view. *See, e.g., Schacht v. Brown* (7th Cir. 1983) 711 F.2d 1343, 51 U.S.L.W. 2627 (April 6, 1983); *Morosani v. First National Bank of Atlanta* (11th Cir.1983) 703 F.2d 1220; *Crocker National Bank v. Rockwell International Corp., et al.* (N.D.Cal.1982) 555 F.Supp. 47.