**Michael HUDSON, Plaintiff,**

v.

**Lyndon LAROUCHE, National Caucus of Labor Committees, Campaigner Publications, New Solidarity International Press Service, New Benjamin Franklin Publishing House Publications and General Management, Inc., Pepper Fine Arts, Fusion Energy Foundation, PMR Printing, Nancy Spannaus, Molly Kronberg, Uwe Parpart, Criton Zoakos, David Goldman and D. Stephen Pepper, Defendants.**

No. 83 Civ. 3293 (RWS).

United States District Court,
S.D. New York.

Dec. 16, 1983.

Calvin R. House, Brooklyn, N.Y., for plaintiff.

Odin P. Anderson, Boston, Mass., for defendants by Louis J. Rotondi, New York City, Mayer Morganroth, Southfield, Mich., Joseph M. Weitzman, New York City, of counsel.

## OPINION

SWEET, District Judge.

Defendants National Caucus of Labor Committees ("NCLC"), Campaigner Publications ("Campaigner"), New Solidarity International Press Service ("New Solidarity"), New Benjamin Franklin Publishing House ("Franklin Publishing"), Publications and General Management, Inc. ("PGM"), Pepper Fine Arts ("Pepper Arts"), Fusion Energy Foundation ("Fusion Foundation"), PMR Printing ("PMR"), Nancy Spannaus ("Spannaus"), Molly Kronberg ("Kronberg"), Uwe Parpart ("Parpart"), Criton Zoakos ("Zoakos"), David Goldman ("Goldman"), and D. Stephen Pepper ("Pepper") have moved, pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), and 9(b), to dismiss the complaint of plaintiff Michael Hudson ("Hudson"), or in the alternative, for a more definite statement pursuant to Fed.R.Civ.P. 12(e). Defendants also seek attorneys' fees and costs under Fed.R.Civ.P. 11 for the bringing of a bad faith claim. For the reasons stated below, the motion to dismiss will be granted and the motion for costs will be denied.

## Facts

In order for defendants to succeed on their motion to dismiss, they must demonstrate "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The complaint at issue alleges four causes of action, a federal cause for a violation of section 1962 of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, under which Hudson seeks treble damages under 18 U.S.C. § 1964(c), and three state law claims alleging fraud, failure to pay promissory notes and breach of contract. Of course, for purposes of this motion, Hudson's factual allegations will be accepted as true.

The NCLC is an unincorporated national political association dedicated to the advancement of the political ideas and career of Lyndon LaRouche. All others named as defendants—both corporate and individual—are affiliated in some way with LaRouche and NCLC. In December, 1980, following the sale of his home, Hudson was urged by LaRouche, Parpart, Goldman, and Zoakos to lend the proceeds of the sale "to some arm of the NCLC." On January 2, 1981, Hudson loaned Franklin Publishing $75,000 in return for three promissory notes. The notes were payable in three months at 20% interest and were signed by Spannaus and Kronberg as officers of Franklin Publishing. Spannaus and Kronberg allegedly told Hudson that the money was needed "to shore up Franklin Publishing's balance sheet and to finance publication of several books dedicated to the purposes of LaRouche and NCLC."

Repayment was not made in April as promised. Between April, 1981 and November, 1982, Franklin Publishing issued ten checks (representing partial payments) which were returned either because of insufficient funds or stop payment orders. Five additional checks written to Hudson on Campaigner and PGM accounts during 1982 and early 1983 were also returned by the issuing banks. Several of these bad checks were received by Hudson through the mail. Throughout the period in question, Spannaus and Kronberg, as chief executive officers of Franklin Publishing, made promises and representations to Hudson as to the repayment and refinancing of the loan. After attempting to renegotiate the promissory notes in April and August of 1981, Hudson filed this action on April 29, 1983.

Hudson contends that Franklin Publishing and the other named corporate defendants operate as part of an interstate network of ostensibly legitimate front organizations through which LaRouche, NCLC, and the other named individual defendants conduct a pattern of racketeering activity. Hudson claims that the defendants engaged in a scheme to defraud him through the use of mail and wire fraud. Specifically Hudson maintains that LaRouche and the NCLC "with the connivance of the other individual defendants", defrauded him of $75,000, and in addition, engaged in extortion and threats of violence against officers, directors and employees of the various affiliated organizations in an effort to siphon money into the LaRouche and NCLC political activities. The complaint cites Computron Technologies Corporation, a computer software company formed in the 1970s, as an example of a victim of the LaRouche-NCLC network, alleging that the defendants' pattern of racketeering activity defrauded Computron's creditors and drove the company into bankruptcy.

In their consolidated memorandum of law, defendants maintain that this is a straight-forward commercial note claim, disguised as civil RICO, and as such belongs in state rather than federal court. They further maintain that this lawsuit is being financed by political opponents of NCLC who, through the maintenance of this suit and this court's rules of liberal discovery, hope to harrass and discredit the LaRouche political organization. As a result, defendants raise First Amendment objections. They also seek costs and attorneys' fees for the institution of a bad faith claim.

### Discussions

RICO was enacted "to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Pub.L. No. 91–452, 84 Stat. 922, 923 (1970). While primarily creating a criminal statute aimed specifically at the infiltration of business enterprises by organized crime, Congress included a private right of action for treble damages to anyone injured "by reason of" a violation of the Act.[1]

The Court of Appeals in this Circuit has recently set forth the two pleading burdens imposed upon a plaintiff seeking to state a claim for damages under civil RICO. *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5 at 17 (2d Cir.1983). A plaintiff must first allege adequately that defendants have violated the substantive RICO statute, 18 U.S.C. § 1962, commonly known as "criminal RICO," before turning to the second burden of alleging that he was injured in his business or property *"by reason of* a violation of section 1962." *Id.* The complaint in this action is defective at both levels of inquiry.

### The Substantive 1962(c) Violation

■ Although the standard of proof differs, the essential elements of a substantive RICO offense, § 1962, are the same in both criminal and civil RICO actions.[2] The applicable language for the alleged violation in the instant case prohibits any "person" (including a corporation) employed by or associated with any interstate "enterprise," from conducting the affairs of that enterprise through a "pattern of racketeering activity." 18 U.S.C. § 1962(c). "Enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4). A "pattern of racketeering activity" is defined as the commission of two or more specific criminal acts within a ten-year period, including extortion, mail and wire fraud. 18 U.S.C. § 1961(5).

■ Since the gravamen of a RICO offense is the conduct of an enterprise through a pattern of racketeering activity and not merely the commission of the predicate acts, there must be a nexus between the enterprise and the pattern of racketeering activity. *Moss v. Morgan Stanley, Inc., supra* at 21–22; *United States v.*

---

1. Although included in one of the earlier Senate versions of RICO, the private right of action was not a part of Senate Bill 30 which the Judiciary Committee presented for the Senate's approval. In the House, S. 30 underwent a number of changes including the addition of a private treble damage provision which had been suggested to the House subcommittee by the American Bar Association. Apparently, the change did not generate any discussion in either the House or the Senate before final adoption. Note, *RICO and Securities Fraud: A Workable Limitation*, 83 Colum.L.Rev. 1513, 1524, n. 86 (1983). *Harper v. New Japan Securities Intern., Inc.*, 545 F.Supp. 1002 (C.D.Cal.1982).

2. Variation in the standard of proof between criminal RICO and civil RICO only alters the degree of certainty to which a jury must be convinced, but does not change the elements of the offense. The express references in § 1964(c) to injury "by reason of" a violation of the criminal RICO makes it clear that civil RICO plaintiffs must prove the same elements which the government must prove, *Eaby v. Richmond,*

561 F.Supp. 131, 134 (E.D.Pa.1983), although it is well-settled that prior convictions for alleged predicate offenses are not preconditions to bringing a civil RICO suit. *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5 at 19 n. 15 (2d Cir. 1983). A recent *National Law Review* article raises the question of whether a higher standard of proof, such as "clear and convincing evidence," may be a more appropriate standard, at least for the requirement that a plaintiff in a civil RICO case prove a "pattern of racketeering activity." Matz, *Determining the Standard of Proof in Lawsuits Brought Under RICO*, Natl.L.J. Oct. 10, 1983, at 21, col. 1. Likewise, in a recent opinion, the Second Circuit acknowledged but did not reach the potential "constitutional problems, res judicata problems, and trial problems" of the differing burdens of proof. *Trane v. O'Connor Securities*, 718 F.2d 26 at 29 (2d Cir. 1983). *See* Brodsky, *Civil RICO Actions—What is Position of Second Circuit?*, New York L.J. October 19, 1983, at 1, col. 1, for a discussion of the apparent contradictions in the *Moss* and *Trane* opinions, issued by the Second Circuit only ten days apart.

*Cauble,* 706 F.2d 1322, 1332–33 (5th Cir. 1983), citing *United States v. Phillips,* 664 F.2d 971, 1011 (5th Cir.1981), *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982). *See also United States v. Riccobene,* 709 F.2d 214, 224 (3d Cir.1983) (it is an agreement "to conduct or participate ... in the conduct of an enterprise's activities ... not an agreement to commit a pattern of racketeering activity alone" which is necessary to support a RICO conspiracy charge). To establish the nexus between the proscribed conduct and the "enterprise" as required by § 1962(c), the Court of Appeals for this Circuit has stated the following test:

> ... [O]ne conducts the activities of an enterprise through a pattern of racketeering when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise. Simply committing predicate acts which are unrelated to the enterprise or one's position within it would be insufficient.

*United States v. Scotto,* 641 F.2d 47, 54 (2d Cir.1980). *See also United States v. Provenzano,* 688 F.2d 194, 200 (3d Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982).

The following year, the Supreme Court in *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), clarified the definition of "enterprise" (to include wholly illegal as well as legitimate businesses) and addressed the issue of whether the "enterprise" and the "pattern of racketeering activity" were separate elements to be proved:

> The ["enterprise"] is proved by evidence of an on-going organization, formal or informal, and by evidence that the various associates function as a continuing unit. The ["pattern of racketeering activity"] is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other.... The existence of an enterprise at all times remains a separate element which must be proved....

*Id.* at 583, 101 S.Ct. at 2528. While the *Turkette* decision implied that the existence of an "enterprise" for § 1962 purposes required something more than simply the association necessary for the commission of the predicate acts, this Circuit has found that a group of jockeys and bettors connected only by their common interest in profiting from illegally fixed races, satisfied the RICO enterprise element, *United States v. Errico,* 635 F.2d 152, 156 (2d Cir.1980), *cert. denied,* 453 U.S. 911, 101 S.Ct. 3142, 69 L.Ed.2d 994 (1981).[3]

---

**3.** With the proliferation of civil RICO claims in the past several years, some courts have attempted to limit the availability of the civil remedy by restricting the scope of the "enterprise" element, *see, e.g., Hokama v. E.F. Hutton & Co.,* 566 F.Supp. 636, 643 (C.D.Cal.1983) (requiring a nexus between "enterprise" and "organized crime"), but the Second Circuit has rejected the rationale that a RICO claim must allege the existence of an "enterprise" which is both economically independent from the "pattern of racketeering activity" and which is tied to "organized crimes." *Moss, supra,* 719 F.2d 5 at 20. Similarly, the Second Circuit in *United States v. Mazzei,* 700 F.2d 85, 89 (2d Cir.1983), has expressly rejected the Eighth Circuit's view that the evidence offered to prove the existence of the "enterprise" and the existence of a "pattern of racketeering activity" must necessarily be distinct, *Bennett v. Berg,* 685 F.2d 1053, 1060 (8th Cir.1982). A rehearing *en banc* affirmed the first panel, 710 F.2d 1361, before a petition for certiorari was filed with the Supreme Court on October 8, 1983 presenting the following questions: (1) Does RICO create federal treble-damage cause of action for garden-variety civil misrepresentation, anticipatory breach of contract, and consumer claims? (2) Does *U.S. v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246, compel federal courts to grant standing, jurisdiction, and cause of action to consumers who cannot allege any commercial harm proximately caused by violation of Act but who seek treble damages for alleged mail fraud? (3) Is mortgage lender deemed as matter of law to be "associated with" its borrowers within the meaning of RICO so as to make it liable for their alleged misconduct? 52 U.S.L.W. 3430 (U.S. November 29, 1983).

■ Turning to the facts of this action, the complaint alleges that "LaRouche, NCLC and the other individual defendants conduct and participate in the conduct of the affairs of Campaigner, NSIPS, Franklin Publishing, PGM, Fusion, Pepper Fine Arts and PMR Printing through a pattern of racketeering activity." The complaint, however, fails to distinguish these enterprises—the vehicles for the pattern of racketeering activity—from the individual defendants whose conduct RICO proscribes. *See Bennett v. Berg*, 685 F.2d 1053, 1061 (8th Cir.1982) on rehearing 710 F.2d 1361 (8th Cir.), cert. denied, —— U.S. ——, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). The enterprise must be distinct from the culpable "person" since RICO envisions a relationship between a "person" and an "enterprise," and since it is the activity of the person, not the enterprise which RICO condemns. *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190–91 (4th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 729, 74 L.Ed.2d 953 (reversing the district court's dismissal of a 57-count indictment including multiple RICO claims, but affirming dismissal, with prejudice, of RICO counts where defendant corporation was indistinguishable from "enterprise"); *Van Schaick v. Church of Scientology of Cal., Inc.*, 535 F.Supp. 1125, 1136 (D.Mass. 1982) (dismissing RICO counts for failure to state a claim); *Bays v. Hunter Savings Assn.*, 539 F.Supp. 1020, 1024 (S.D.Ohio 1982) (denying plaintiff's motion to amend the complaint to include a civil RICO claim).

■ This pleading defect, however, is not fatal to Hudson's claim against the corporate defendants because, read liberally, the complaint also appears to allege that the entire "LaRouche-NCLC network" is an enterprise for purposes of § 1962(c).[4] Complaint, ¶¶ 17, 18. All of the individual and corporate defendants are affiliated in some way with LaRouche and NCLC and allegedly have the common goal of furthering LaRouche's political interests. This so-called "LaRouche-NCLC network" constitutes an "enterprise" for purposes of section 1962(c). *See United States v. Huber*, 603 F.2d 387, 393–94 (2d Cir.1979) (a group of corporations may be an enterprise), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *United States v. Thevis*, 665 F.2d 616, 625 (5th Cir.1982) (a group of individuals associated in fact with various corporations may be an enterprise), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982).

Plaintiff has therefore met the threshold burden of pleading a substantive § 1962 violation of RICO if the complaint adequately alleges the underlying predicate acts necessary to establish the "pattern of racketeering activity." It does not.

### The Predicate Acts of Fraud

■ Rule 9(b) of the Fed.R.Civ.P. requires that "the circumstances constituting fraud ... be stated with particularity." "Circumstances" have been defined to include such matters as the time, place and contents of false representations, as well as the identity of the persons making the representation and what was obtained or given up thereby. *Bennett v. Berg, supra* at 1062. The Second Circuit Court of Appeals has reiterated that "[t]o pass muster in this Circuit a complaint must allege with

---

**4.** Moreover, it is possible to envision a set of facts which could constitute a valid RICO claim under the Second Circuit's liberal interpretation of "enterprise." *See United States v. Hartley*, 678 F.2d 961, 989 (11th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983) (finding that a corporation may be simultaneously both a defendant and the enterprise in upholding a criminal conviction under RICO where there was "a sufficient nexus between the deceptive activities employed by the defendants ... and the common everyday affairs of the enterprise ..."). The Fifth Circuit reached a similar conclusion in *United States v. Cauble*

where, like in the instant case, the individual defendant and the enterprise were closely identified:

> ... [I]f the defendant exercised such control over the legal enterprise as to make his acts the acts of the enterprise, proof of the defendant's commission of racketeering acts satisfies both nexuses. In that event the defendant's connection with the racketeering acts is also the enterprise's connection. This is "conduct" of a legal enterprise through a pattern of racketeering activity.
> 706 F.2d at 1322, n. 24.

some specificity the acts constituting the fraud; conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982).

The fraudulent acts which underlie the RICO claim here can be summarized as (1) those acts and representations made to Hudson, first in connection with securing his $75,000 loan to Franklin Publishing and subsequently, in forestalling his institution of any collection proceedings, and (2) the mail and wire fraud allegedly perpetrated on the creditors of Computron Technologies.

The second set of allegations of fraud relating to Computron Technologies can be disposed of summarily since Hudson includes nothing in the complaint connecting the parties of this action with Computron beyond the assertion that defendants (collectively) "drove Computron into bankruptcy."

The remaining allegations of fraud relate to Hudson's loan to Franklin Publishing, which, according to the complaint, defendants never intended to repay. The allegedly false representations upon which Hudson relied in lending Franklin Publishing money included (1) a representation that the $75,000 would be used to shore up Franklin Publishing's balance sheet and to finance publication of books dedicated to the purposes of LaRouche and the NCLC, (2) a promise of repayment of the $75,000 loan in three months at 20% interest, the delivery of stock in Franklin Publishing and the execution of certain documents in the interim, and (3) false representations of urgency to secure the money because PMR was about to take off-line books scheduled for publication.

Each of the above representations is attributed to the defendants collectively. Only defendants Spannaus and Kronberg are mentioned with some, albeit very little, particularity. The complaint and supporting affidavits recite no dates, times or places surrounding any of the allegedly fraudulent representations and offer no written documentation, despite the fact that at least some of the statements upon which Hudson purportedly relied were made to him in the presence of his lawyer.

■ There is no allegation of involvement on the part of four of the corporate defendants. Fusion Foundation is characterized in the complaint as "a vehicle for disseminating political propaganda to the general public" and as "an important source of funds for the LaRouche-NCLC network." New Solidarity, it is said, publishes "materials relating exclusively to LaRouche and NCLC." New Solidarity and Fusion Foundation also share the same office and phone number with NCLC and Franklin Publishing. Pepper Arts is characterized as "an investment vehicle for the LaRouche-NCLC network," and PMR is described in the complaint as "the printing arm of the LaRouche-NCLC network." Likewise, three of the individual defendants—Parpart, Zoakos, and Goldman—are specifically named in the allegations only once as urging plaintiff "to lend the money to the NCLC-LaRouche network." Defendant Pepper is never mentioned in the specific allegations except as someone who "runs Pepper Fine Arts and writes for Executive Intelligence Review." Mere association with a lawful enterprise whose affairs are conducted through a pattern of racketeering activity in which the defendant is not personally engaged does not establish guilt under RICO. *United States v. Cauble, supra,* 706 F.2d at 1332. Finally, the two checks to Hudson drawn on the accounts of Campaigner and PGM, alone fail to meet the higher standards of Rule 9(b) pleading.

Similarly, the charge that "LaRouche, NCLC and the other individual defendants" maintain their control over the affairs of the various affiliated organizations "through extortion and their links with organized crime ... [and by threatening with force] officers, directors and employees of those entities," is unsupported beyond the naked assertion, though it raises the fascinating possibility that the defendants were threatening each other or themselves.

*Injury "By Reason Of"*

■ Even if Hudson had adequately alleged fraud and met his threshold burden of establishing a violation of § 1962(c), his claim would fail for lack of an injury "by reason of" such a violation. 18 U.S.C. § 1964(c). A growing number of courts, including this one, have interpreted those words to require something more than a direct injury resulting from the predicate acts. *Gitterman v. Vitoulis*, 579 F.Supp. 423 at 427 (S.D.N.Y.1983); *Bankers Trust v. Feldesman*, 566 F.Supp. 1235 (S.D.N.Y. 1983); *Waste Recovery Corp. v. Mahler*, 566 F.Supp. 1466 (S.D.N.Y.1983). *See also Moss, supra*, 719 F.2d 5 at 20 n. 16, where the Second Circuit did not reach the question of what type of injury is required by section 1964(c) because plaintiff failed to establish the requisite predicate acts, but where the Court italicized the words "by reason of" for emphasis.

The fact that efforts to limit substantively the applicability of RICO's considerable equitable civil remedies have met with disfavor in a majority of the circuits should not obscure the remaining necessity for this court to construe the legislative intent behind the restrictive words "by reason of" in the 1964(c) private treble damage provision. *Harper v. New Japan Securities Intern., Inc.*, 545 F.Supp. 1002, 1006 (C.D. Cal.1982). As the California district court in *Harper* noted:

> ... [T]he requirement that the injury to be redressed occur "by reason of" a violation of § 1962 is the most meaningful limitation which can be imposed on § 1964(c). Only if this causal connection exists will the policies and purposes of RICO be served by permitting a private right of action. This construction while avoiding the imposition of the antitrust requirement of "competitive injury," recognizes the similarities between the RICO treble damages provision and § 4 of the Clayton Act. In light of Congress' failure to provide any direction in determining the rules of standing appropriate to the RICO treble damage provision, the

antitrust analogy is the construction of the statute which is most likely to reflect Congress' understanding of the words "by reason of."

*Harper, supra*, 545 F.Supp. at 1008.

Similarly, in *Landmark Savings & Loan v. Loeb Rhoades, Hornblower & Co.*, 527 F.Supp. 206, 208 (E.D.Mich.1981), the Michigan district court did not require a "competitive injury" as the term is understood in the antitrust context but held that "to have standing to bring a RICO treble damage action, a plaintiff must allege that he has suffered a "racketeering enterprise injury," or in other words, the kind of injury that RICO was intended to prevent. The court offered the following illustration:

> A "racketeering enterprise injury" might occur, for example, if a civil RICO defendant's ability to harm the plaintiff is enhanced by the infusion of money from a pattern of racketeering activity into the enterprise.

*Landmark, supra*, 527 F.Supp. at 209.

In the instant case, Hudson has failed to allege injury apart from that resulting from the alleged fraud. Liberally construed, the complaint alleges no injury by reason of a violation of RICO but only by reason of the alleged predicate acts. *See Harper, supra* 545 F.Supp. at 1008. As the court noted in *Richardson v. Shearson/American Express Co.*, 573 F.Supp. 133 (S.D.N.Y.1983):

> The facts of this case exemplify the impropriety of allowing a plaintiff to sue under RICO where the harm suffered was triggered solely by a predicate act of racketeering activity. Here, the injuries plaintiffs claim to have sustained were caused by the fraud allegedly practiced by defendants, and, under no circumstances, could the complaint be interpreted as alleging injury from a violation of section 1962. To permit plaintiffs to maintain a civil RICO action under the facts of this case, would mean that a plaintiff with a basic securities fraud claim could attempt to triple the amount of its recovery by suing under RICO.

The court finds that such a result would be untenable.

Hudson has failed to state a cause of action under RICO. Moreover, his pendent state law claims must fail for lack of jurisdiction. For the foregoing reasons, defendants' motion to dismiss the complaint is granted. Plaintiffs are granted leave to replead the complaint within twenty (20) days.

■ The state of the authorities, as discussed above, belies the charge by the defendants that the complaint was brought in bad faith. Defendants' motion for costs and attorneys' fees under Fed.R.Civ.P. 11 is denied.

IT IS SO ORDERED.