NATIONAL WOMEN'S HEALTH NETWORK, INC., et al., Plaintiffs,

v.

A. H. ROBINS COMPANY, INC., Defendant.

Civ. A. No. 81–0004–N.

United States District Court, D. Massachusetts.

Aug. 25, 1982.

**1178**

Robert E. Manchester, David J. Fine, Baker & Fine, Cambridge, Mass., Lisman & Lisman, Burlington, Vt., Harris Wagenseil, Washburn, Kemp & Wagenseil, San Francisco, Cal., for plaintiffs.

Mary Morrison Sullivan, Carrollyn S. Kelly, Rebecca J. Wilson, Parker, Coulter, Daley & White, Boston, Mass., Anne Marie Whittemore, McGuire, Woods & Battle, Richmond, Va., for defendant.

## MEMORANDUM AND ORDER

DAVID S. NELSON, District Judge.

This is another of the many cases arising out of the manufacture and sale of an intrauterine device (IUD) known as the Dalkon Shield by defendant A. H. Robins Company. Plaintiffs include two women allegedly injured by the device, their husbands, and two organizations affected by the dangers of the Dalkon Shield. In addition to the couples' claims for damages, plaintiffs seek certification of a class action for injunctive relief on behalf of all users and former users of the Dalkon Shield. The relief requested would require Robins to indemnify former users for the costs of removal. With regard to present users, Robins would be required to conduct an identification and notification campaign, warning them directly of the risks of continuing use. In those cases where the user then opted for removal of the Dalkon Shield, Robins would again be required to pay the costs. As plaintiffs have characterized the desired relief, it would amount to a worldwide recall of the Dalkon Shield.

Robins has filed three motions to dismiss. These motions, respectively, challenge the subject matter jurisdiction of the court, the standing of all plaintiffs to raise claims on behalf of the putative class, and the availability of declaratory and injunctive relief, punitive damages and attorney's fees. In addition to the motion to certify a class, plaintiffs filed a motion for a preliminary injunction. The parties have urged different procedures in considering these motions. Plaintiffs have suggested a consolidated consideration of the motions to dismiss, the motion to certify a class, and the motion for a preliminary injunction. Robins, on the other hand, has advocated a sequential consideration of the pending motions, starting with the motions to dismiss. Because I agreed with Robins that a ruling on the motions to dismiss might narrow or moot the other pending issues, I ordered and heard arguments on those motions, on July 20, 1982, before consideration of the plaintiffs' motions. I now conclude that the motion to dismiss the request for declaratory and injunctive relief must be allowed.

### I. The Federal Food Drug and Cosmetic Act.

■ I have no difficulty in holding that no private right of action can be implied under the Federal Food Drug and Cosmetic Act. This holding accords with that reached by every other federal court which has faced the issue. E.g., *Pacific Trading Co. v. Wilson and Co.*, 547 F.2d 367, 370–71 (7th Cir. 1976); *Keil v. Eli Lilly & Co.*, 490 F.Supp. 479, 480 (E.D.Mich.1980); *American Home Products v. Johnson and Johnson*, 436 F.Supp. 785, 791 (S.D.N.Y.1977); *Clairol v. Suburban Cosmetics and Beauty Supply*,

*Inc.,* 278 F.Supp. 859, 860–61 (N.D.Ill. 1968).*

Plaintiffs argue that all of the cases denying a private right of action under the FDCA can be distinguished on the basis that they involve either actions for damages or for equitable relief enjoining future violations of the statute. This case, in contrast, involves an action for remedial equitable relief. Plaintiffs' Memorandum in Opposition to Motions to Dismiss at 10–12. This purported distinction is illusory. There is no reason to believe that a private right of action for remedial equitable relief should lie where an action to restrain ongoing violations does not. Likewise there is no reason why the FDCA should afford a right of action for a costly notification-recall-reimbursement campaign when it does not afford a right of action for damages.

Plaintiffs rely in part on the general proposition that "equitable remedies may be inferred more readily than damage remedies." *Farmland Industries, Inc. v. Kansas-Nebraska Natural Gas Co.,* 349 F.Supp. 670, 679 (D.Neb.1972). This proposition is unavailing for two reasons. First, there remain the *American Home Products* and *Clairol* cases, *supra,* in which courts have rejected a claimed private right of action for equitable relief. More importantly, however, the general rule that a right of action for equitable relief is more easily inferred than one for damages cannot be applied blindly. A federal right of action can be inferred from a statute only when Congress intends such a right. *Touche Ross & Co. v. Reddington,* 442 U.S. 560, 568, 575, 99 S.Ct. 2479, 2485, 2488, 61 L.Ed.2d 82 (1979). Where the equitable relief sought is simply court-ordered adherence to the statute in the future, courts may be more prone to infer congressional intent than they would be in the case of a suit for damages. See, e.g., *Mobile Corp. v. Marathon Oil,* 669 F.2d 366, 370–73 (6th Cir. 1981). Such a limited right of action is likely to be consistent with the language of the statute, its legislative history, and the underlying purpose and structure of the statutory scheme—the factors by which courts assess congressional intent. See *Northwest Airlines Inc. v. Transport Workers,* 451 U.S. 77, 91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981). The same cannot be said of the radical remedy of worldwide recall sought in this case. Because of the nature and scope of the remedy, this is a far weaker case for implication of a private right of action than any of the adverse cases which plaintiffs attempt to distinguish.

Independent of the force of precedent, the language of the Act and its legislative history clearly evidence Congress' intent that it should be enforced only by the government. Section 337 requires that "(a)ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States," thereby precluding a private right of action. Plaintiffs attempt to avoid this language through emphasis on the word "such," which in their view refers specifically to "the particular type of equitable proceedings discussed in the immediately preceding sections of the statute." Plaintiffs Memorandum at 14. Thus, they argue, a private right of action for other types of equitable relief is still possible. This argument limits the language of § 337 unnaturally. Section 337 concludes a subchapter of the Act entitled "Prohibited Acts and Penalties" which sets out the basic mechanisms for enforcing the Act, not merely "a particular type of equitable proceedings." Therefore, the section must be construed to refer to the enforcement power generally, rather than some limited aspect of that power. In § 337 Congress established that the Act would be enforced publicly, as indeed it has been without exception during the ensuing 44 years.

The legislative history of the FDCA further undermines plaintiffs' position. Prior to passage of the Act, Congress considered and rejected a version which would have allowed a private right of action for damages. See Hearings on S. 1944 (Subcommit-

---

* The full line of cases appears in Defendant's Memorandum in Support of Motions to Dismiss at 6 and Defendant's Reply Memorandum at 7–8 n.9.

tee of Committee on Commerce) 73d Cong., 2d Sess. While plaintiffs would again limit the effect of this action to an action for damages, the more logical interpretation is that Congress considered a private right of action only for damages because it was clear that equitable proceedings would be brought publicly.

The subsequent history of the Act is consistent with this thesis. In 1976, partially in response to the problems associated with the Dalkon Shield, Congress amended the FDCA to increase the powers of the Secretary of the Food and Drug Administration in regulating medical devices. See 1976 USCCAN 1070, 1071. This amendment expressly established the remedies advocated by plaintiffs in this case—notification and recall—and vested the power to seek these remedies *in the Secretary.* 21 U.S.C. § 360h. In its report on the bill, the Senate Labor and Public Welfare Committee indicated that "the Secretary should have considerable discretion in determining whether or not users of devices must be notified of defects in any given case." 1976 USCCAN 1086. Such discretion, of course, would be eliminated by the private right of action sought by plaintiffs. As a result, the major advantages of enforcement through the Secretary would be lost, including expertise, ability to solicit comment from appropriate sources, direct representation of the public interest, and a unitary enforcement policy.

As the precedent noted earlier demonstrates, the factors militating against implication of a right of action have prevailed consistently, even before the recent Supreme Court cases which have marked a more cautious approach toward implying rights of action. See *Northwest Airlines, supra; Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross, supra.* If any basis for plaintiffs' position remained, these cases foreclose it. *Northwest Airlines* reiterates a strong presumption that Congress has deliberately omitted a given remedy whenever it enacts "a comprehensive legislative scheme including an integrated system of procedures for enforcement," as it did with the FDCA. 451 U.S. at 97, 101

S.Ct. at 1583. See *id.* at 93–94, 101 S.Ct. at 1581. *Transamerica* and *Touche Ross* convey similar messages: the Court notes that judges should be extremely reluctant to imply remedies additional to or broader than those provided in the statute. 444 U.S. at 19, 100 S.Ct. at 246; 442 U.S. at 574, 99 S.Ct. at 2488. In *Transamerica* the Court commented that in light of the judicial and administrative means of enforcement provided by the statute in question, it was "highly improbable that Congress absent-mindedly forgot to mention an intended private action." 444 U.S. at 20, 100 S.Ct. at 247. Without citing all of the relevant language in these cases, I think it apparent that they are fatal to plaintiffs' cause. A right of action cannot be implied without some indication that Congress intended such a right, whereas here all of the indications are unmistakably to the contrary.

## II. *State Law Claim.*

■ Although the complaint asserts a claim for relief under federal common law, this untenable claim has not been pressed by plaintiffs. I turn, therefore, to the state law claim. As with federal law, I have no difficulty in holding that there is no basis for the requested injunctive relief. Not surprisingly, state law simply does not provide a basis for worldwide recalls.

At the outset I note, as has defendant, that the prospect of a state law-based recall action raises a significant choice of law problem, as well as a jurisdictional problem. It is difficult to understand where a court applying Massachusetts law, for example, would get the authority to order a worldwide recall of a product manufactured in another state or states. Yet, even if there were answers to these questions, there remain more fundamental problems.

No court has ever ordered a notification and recall campaign on the basis of state law. The vast majority of the state law cases cited by plaintiffs are ordinary duty to warn damage actions, a line of cases which is well established but not authority for the much broader form of relief sought

in this case. E.g., *Basko v. Sterling Drug, Inc.*, 416 F.2d 417 (2d Cir. 1969); *Comstock v. General Motors Corp.*, 358 Mich. 163, 99 N.W.2d 627 (1959). Only one case supports plaintiffs' state law claim. In *Anthony v. General Motors Corp.*, 33 Cal.App.3d 699, 109 Cal.Rptr. 254 (1973) the California Court of Appeals did reverse a dismissal of a consumer class action for recall, but the court considered only the propriety of a class action and did not reach the issue of whether the relief requested was appropriate. All in all, *Anthony* is a weak foundation for the present claim.

I am also persuaded that even if there were state law authority for a notification and recall campaign, such authority would be preempted by the FDCA for the same reasons that there is no implied right of action. Preemption, like the implication of a right of action, is a question of congressional intent. See, e.g., *United Labor Life Insurance Co. v. Pireno*, —— U.S. ——, ——, 102 S.Ct. 3002, 3007, 73 L.Ed.2d 647 (1982). A private right of action is equally inconsistent with the federal regulatory scheme, whether the right is based in federal or state law. Especially in view of the 1976 amendment to the FDCA which specified the powers of the Secretary in regulating medical devices, any state law which would put these same powers in other hands must be deemed foreclosed. As the legislative history discussed previously indicates, Congress intended the Secretary of the FDA to have discretion as to when to seek recall. Since the federal interest in this area is "dominant" and the regulatory scheme is "pervasive," see *id.*, preemption must follow. Under the FDCA it is apparent that medical devices, and IUDs in particular, are to be regulated by the FDA through federal law.

### III. *Declaratory Relief.*

It is settled that "declaratory relief like other equitable remedies should be granted only as a matter of judicial discretion exercised in the public interest." *Puerto Rico International Airlines, Inc. v. Silva Recio*, 520 F.2d 1342, 1345 (1st Cir. 1975).

Given the impending dismissal of the claim for a notification and recall campaign, there is no doubt that the claim for declaratory relief should also be dismissed. A declaratory judgment establishing the defectiveness of all Dalkon Shields and fraudulent concealment on the part of Robins might make some sense in the context of a worldwide recall, but it makes no sense in the context of a suit for damages by two women and their husbands. Indeed, plaintiffs' argument is built on the parallels between their claim for injunctive relief and their claim for damages. To the extent that the two claims involve overlapping issues it might be both fair and economical to resolve them together. Plaintiffs' Memorandum at 41–43. However, with the dismissal of the claim for injunctive relief, this argument collapses. The declaratory judgment sought by plaintiffs will be unnecessary to the decision in this case, will not resolve or avoid future cases, and will not provide guidance to either party regarding future conduct. Thus, there is no legitimate reason for hearing a request for declaratory relief which would drastically broaden this case. I therefore decline to exercise jurisdiction over the claim for declaratory relief.

For all of the above reasons, it is hereby ORDERED that all of plaintiffs' claims for declaratory and injunctive relief are DISMISSED. Accordingly, the motions to certify a class and motion for preliminary injunctive relief are DENIED. The case shall proceed as a damage action.

SO ORDERED.