Alfred D. LOPEZ, Jeanie Reitzell,
Plaintiffs,

v.

DEAN WITTER REYNOLDS, INC., a
corporation, Defendant.

No. C–83–20172–WAI

United States District Court,
N.D. California.

July 31, 1984.

M. Van Smith, Palo Alto, Cal., for plaintiffs.

Jay R. Martin, Eric G. Wallis, Crosby, Heafey, Roach & May, Oakland, Cal., for defendant.

## ORDER

INGRAM, District Judge.

This suit is based on alleged mishandling by defendant Dean Witter Reynolds, Inc. ("Dean Witter") of plaintiff Lopez's securities account and plaintiff Reitzell's securities and commodities futures accounts. Claims one (Lopez) and two (Reitzell) allege that Dean Witter churned plaintiffs' securities accounts in violation of Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (2). Claim three, by Reitzell alone, alleges churning of her commodities futures account in violation of Section 4b of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 6b. Claim four, by both plaintiffs, alleges two violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Claims five (Lopez) and six (Reitzell) allege fraudulent nondisclosure of excessive trading of plaintiff's securities accounts in violation of state common law. Claims seven (Lopez) and eight (Reitzell) allege further violations of Section 12(2) of the Securities Act of 1933 in that Dean Witter failed to disclose that it was acting as a "dealer" in certain transactions with plaintiffs.

Dean Witter has made a variety of alternative motions in response to this complaint. First, Dean Witter moves to compel arbitration of claims five and six pursuant to the contracts signed by the parties. Second, defendant moves to dismiss claims one and two for failure to plead compliance with the applicable statute of limitations. Third, Dean Witter moves to dismiss claims one, two, three, five, six, seven, and eight for failure to plead fraud with particularity as required by Fed.R.Civ.P. 9(b). Fourth, Dean Witter moves to dismiss claim four for failure to state a claim upon which relief may be granted. Fifth, defendant moves to strike plaintiffs' requests for attorneys' fees and punitive damages under claims one, two, three, seven, and eight. Sixth, Dean Witter moves to strike plaintiffs' prayer for compensation for trading losses in claims one, two, and three. Finally, defendant moves to sever plaintiffs on the ground that they are improperly joined.

### A. *Arbitration*

Dean Witter's motion to compel arbitration of claims five and six is hereby DENIED without prejudice. The United States Supreme Court has granted review of *Byrd v. Dean Witter Reynolds, Inc.,* 726 F.2d 552 (9th Cir.1984), *cert. granted,* — U.S. ——, 104 S.Ct. 3509, 82 L.Ed.2d 818 (1984). In *Byrd* the Ninth Circuit held that when arbitrable and non-arbitrable claims are so factually intertwined that the purposes of the United States Arbitration Act, 9 U.S.C. § 1 *et seq.,* and the protective intent of the federal securities laws would be frustrated by separating the claims, the court should refuse to separate them. *Id.* at 554. The Supreme Court's ruling on this issue will be determinative of defendant's motion. Defendant may renew its motion following the Supreme Court's resolution of this question.

### B. *Statute of Limitations*

Dean Witter's motion to dismiss claims one and two for failure to plead compliance

with the applicable statute of limitations is hereby DENIED.

The running of the statute of limitations may be raised by a motion to dismiss only if it is apparent from the face of the complaint that the statute has run. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980). If the assertions of the complaint, read liberally, would permit the plaintiff to prove that the statute has not run, then the proper means of raising the issue is by motion for summary judgment. *Id.*

Actions based on Section 12(2), such as claims one and two, must be brought "within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m.

Claims one and two allege churning which, by its nature, can be based only "on a hindsight analysis of the entire history of a broker's management of an account and of his pattern of trading that portfolio, in comparison to the needs and desires of an investor." *Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 327 (5th Cir.1981) Given this scenario, the fact that plaintiffs filed this lawsuit more than one year after each of them opened their securities accounts with Dean Witter is not determinative of the statute of limitations issue. The date that the alleged churning was, or reasonably could have been, discovered is not apparent from the face of the complaint. Hence, this issue is properly raised by a motion for summary judgment.

C. *Pleading Fraud With Particularity*

Dean Witter's motions to dismiss claims one, two, three, five, six, seven, and eight for failure to plead fraud with particularity are hereby GRANTED. Plaintiffs shall have thirty days leave to amend in accordance with the following analysis.

Claims one, two, three, five, and six are all essentially claims for churning, and each specifically alleges fraud or deceit. Thus, each claim is subject to the pleading requirements of Fed.R.Civ.P. 9(b) as it applies to churning claims. *See Todd v. Oppenheimer & Co., Inc.*, 78 F.R.D. 415, 419 n. 4 (S.D.N.Y.1978); *Hagstrom v. Breutman*, 572 F.Supp. 692, 698 (N.D.Ill.1983).

There is some disagreement among the courts as to the degree of specificity with which churning claims must be alleged. *Compare Hagstrom v. Breutman*, 572 F.Supp. at 698, *with Zaretsky v. E.F. Hutton & Co., Inc.*, 509 F.Supp. 68, 74 (S.D.N.Y.1981). I believe that the proper rule is set forth in *Baselski v. Paine Webber, Jackson, & Curtis, Inc.*, 514 F.Supp. 535, 541 (N.D.Ill.1981). A complaint for churning, in order to plead excessive trading, should set forth a statement of facts which would permit the determination of either the turnover ratio of the account, or the percentage of the account value paid in commissions. *Id.* However, because the focus of a churning claim is on the aggregate of the transactions ordered by the defendant, it serves no useful purpose to require plaintiffs to describe with particularity every relevant transaction. *Id.*

With respect to claim three, Reitzell must also allege that Dean Witter acted with knowledge or in ignorance brought about by wilfully or carelessly ignoring the truth. *Commodity Futures Trading Com'n v. Savage*, 611 F.2d 270, 283 (9th Cir.1979). Such an allegation may be averred generally. Fed.R.Civ.P. 9(b).

Claims seven and eight, for fraudulent nondisclosure of the fact that defendant acted as a "dealer" in certain transactions, are ambiguous because the statutory definition of "dealer" includes a variety of functions, including agent and principal. 15 U.S.C. § 77b(12). Dean Witter was obviously acting as an agent in its relationships with plaintiffs. Plaintiffs have not shed any light on the intent of their allegation in their memorandum in opposition to this motion. If plaintiffs intended to allege nondisclosure by Dean Witter of its status as principal, they must so allege and state with particularity the date of the relevant transactions and the securities involved.

*Troyer v. Karcagi,* 476 F.Supp. 1142, 1149 (S.D.N.Y.1979).

### D. *RICO Claims*

Defendant's motion to dismiss claim four, which alleges violations of 18 U.S.C. § 1962(a) and 18 U.S.C. § 1962(c), is hereby GRANTED. Plaintiffs shall have thirty days leave to amend their complaint in accordance with the following analysis.

Title 18 U.S.C. § 1962(a) states in pertinent part:

[i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Section 1962(c) states:

[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ....

Plaintiffs pray for the unique relief available under RICO, which is contained in 18 U.S.C. § 1964(c):

[a]ny person injured in his business or property by reason of a violation of Section 1962 may sue ... and shall receive threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Sections 1962(a) and 1962(c) encompass several key terms. A "person" includes "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). An "enterprise" includes any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

18 U.S.C. § 1961(4). A "pattern of racketeering activity" consists of "at least two acts of racketeering ... the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "Racketeering" is defined as any of several broad categories of crimes, including mail fraud, wire fraud, and fraud in the sale of securities. 18 U.S.C. § 1961(1).

#### 1. *Pleading of Predicate Acts of Racketeering Activity*

Plaintiffs' complaint is defective for three reasons. First, plaintiffs have failed to plead the predicate acts of racketeering activity with sufficient particularity for either of their RICO claims. When the alleged "pattern of racketeering activity" is a series of frauds, the pleading of the predicate fraudulent acts is governed by Fed.R.Civ.P. 9(b). *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982). Plaintiffs must allege with particularity such matters as the time, place, and contents of the false misrepresentations and the identity of the person making the misrepresentations. *Id.* General allegations that defendant benefited from racketeering activity which "includes mail fraud and wire fraud," Complaint of Plaintiff at ¶ 16, *Lopez v. Dean Witter Reynolds, Inc.,* No. C 83–20172 WAI (hereinafter "Complaint"), are insufficient.

#### 2. *Pleading a Separate "Enterprise"*

Second, Sections 1962(a) and 1962(c) impose liability on the "person" involved in the illegal activity, not the "enterprise." *D & G Enterprises v. Continental Ill. Nat. Bank,* 574 F.Supp. 263, 270 (N.D. Ill.1983); *Bays v. Hunter Sav. Ass'n,* 539 F.Supp. 1020, 1024 (S.D.Ohio 1982). Moreover, if an entity is the "enterprise," it cannot also be the RICO defendant. *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir. 1984).

A corporation such as Dean Witter could conceivably fall within the statutory definition of a "person," 18 U.S.C. § 1961(3), but that fact must be alleged,

and the complaint must also identify a separate entity that is the "enterprise." *Rae v. Union Bank,* 725 F.2d at 481. As it now stands, the complaint is deficient in that it alleges Dean Witter as the "enterprise." Complaint at ¶ 19.

### 3. *RICO Standing*

 Third, plaintiffs have failed to allege facts sufficient to demonstrate that they have standing to sue under Section 1964(c), which limits plaintiffs to those injured "by reason of a violation of Section 1962 . . . ." 18 U.S.C. § 1964(c). To determine which plaintiffs may bring a RICO claim, it is first necessary to identify who could be damaged under the provisions of Section 1962. Because Congress was not explicit about who is a proper plaintiff under RICO, it is then necessary to examine the legislative history to determine which injuries RICO was intended to redress. It is a "familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because it is not within its spirit, nor within the intention of its makers." *United Steelworkers of America v. Weber,* 443 U.S. 193, 201, 99 S.Ct. 2721, 2726, 61 L.Ed.2d 480 (1979), *quoting Holy Trinity Church v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892).

Section 1962(a) proscribes the use of the proceeds of a "pattern of racketeering activity" to purchase an interest in an "enterprise." H.R.Rep. No. 1549, 91th Cong.2d Sess. 26, *reprinted in* [1970] *U.S.Code Cong. & Admin.News,* 4007, 4033 (hereinafter *"House Report"*). Racketeering activity could cause damage to three categories of plaintiffs under this subsection. First, the victims of the predicate acts of racketeering clearly suffer injury ("predicate act injury"). Second, those other owners and employees who are affiliated with the "enterprise" which is infiltrated by the racketeers could potentially be damaged if the racketeers gain control of the entity's policies ("infiltration injury"). Third, an "enterprise" whose strength is enhanced and purpose is tainted by the infiltration of racketeers is a potential threat to those with whom it does business ("enterprise injury").

Section 1962(c) prohibits any person who is associated with an "enterprise" from conducting the affairs of that entity through a "pattern of racketeering activity." *House Report, supra,* at 4033. Under this subsection, there is no "infiltration injury" because the racketeer is already inside the organization. Therefore, potential plaintiffs are limited to those who suffer "predicate act injury" and "enterprise injury."

Given the potential for "enterprise injury," "predicate act injury," and "infiltration injury," the next step is to examine the legislative history to determine which of these injuries RICO's civil remedies were intended to redress.

The legislative history of RICO reveals that a primary concern of Congress was the deleterious effect of organized crime on our nation's free enterprise system. In the statement of findings which prefaces RICO, Congress stated that "organized crime activities in the United States weaken the stability of the Nation's economic system, harm . . . competing organizations, [and] interfere with free competition . . . ." Organized Crime Control Act of 1970, Pub.L. No. 91–452, 84 Stat. 923 (1970). In Congressional debates, the problem of racketeer-controlled enterprises terrorizing competitors in order to create a monopoly was discussed repeatedly. *See e.g.* 116 Cong.Rec. 591 (1970) (remarks of Sen. McClellan) ("Once it invades a legitimate field of endeavor, the mob quickly brings with it a full range of corrupt practices. It sometimes uses terror tactics to obtain a larger share of the market"); *id.* at 602 (remarks of Sen. Hruska) ("When organized crime infiltrates a legitimate business, its whole method of operation counters our theories of free enterprise and acts as an illegal restraint of trade"). In addition, RICO was originally conceived as an antitrust statute, and the language and remedies embodied in Section 1964(c) are patterned on Section 4 of the Clayton Act, 15

U.S.C. § 15. *See* 116 Cong.Rec. 607 (1970) (remarks of Sen. Byrd); *id.* at 35201 (remarks of Rep. Poff); *Johnsen v. Rogers,* 551 F.Supp. 281, 285–286 (C.D.Cal.1982); *Harper v. New Japan Securities Intern., Inc.,* 545 F.Supp. 1002, 1006–1007 (C.D.Cal. 1982).

 That RICO's civil remedies were intended to redress injuries suffered by people who are harmed in their business affairs by a RICO enterprise is suggested by the following remarks of Representative Mikva during the Congressional debates: "we also put in a private remedy that says that any *competitor* can accuse you, and if he can prove that you have gambled and used the proceeds in the business, then he can go after you and put you out of business" (emphasis added). 116 Cong.Rec. 35205 (1970). Accordingly, I hold that victims of "enterprise injury" should have standing to sue under Sections 1962(a) and 1962(c).[1] *See also Johnsen v. Rogers,* 551 F.Supp. at 285–286; *Harper v. New Japan Securities Intern., Inc.,* 545 F.Supp. at 1007–1008; *Landmark Sav. & Loan v. Rhoades,* 527 F.Supp. 206, 208–209 (E.D. Mich.1981).[2]

The legislative history is unclear as to whether victims of "predicate act injury" under Sections 1962(a) and 1962(c) should have standing to sue under RICO. Throughout the legislative history there are statements about the extraordinary pervasiveness of organized crime and the need to take all available steps to eradicate it. In RICO's statement of findings, Congress stated that "organized crime in the United States is a highly sophisticated, diversified, and widespread activity that annually drains billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud, and corruption." 84 Stat. 922. *See also* 116 Cong.Rec. 602 (1970) (remarks of Sen. Yarborough) ("a full scale attack on organized crime"); *id.* at 35199 (remarks of Rep. Rodino) ("a truly full-scale commitment to destroy the insidious power of organized crime groups"). An absolute commitment to the elimination of organized crime implies the provision of standing to all potential RICO plaintiffs.

However, to give RICO standing to all victims of "predicate act injury" would largely supplant the traditional civil remedies for the acts which are included in the definition of "racketeering activity" in 18 U.S.C. § 1961(1). Most important from a practical perspective is the ability of a capable plaintiff's counsel to transform a traditional securities fraud claim into a RICO claim with the requisite pattern of racket-

---

1. Several courts have rejected the "enterprise injury" limitation on the ground that it is incapable of meaningful definition. *See e.g. Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 567 F.Supp. 1146, 1157 (D.N.J.1983); *Eisenberg v. Gagnon,* 564 F.Supp. 1347, 1352–1353 (E.D. Pa.1983); *Crocker v. Nat'l Bank v. Rockwell Internat'l Corp.,* 555 F.Supp. 47, 49–50 (N.D. Cal. 1982).

Given the remarks of Representative Mikva, it seems clear that competitors of a RICO enterprise should have standing in at least certain situations. However, it is doubtful that the antitrust analogy should be literally applied to the question of what a RICO plaintiff must prove to receive damages. It would be redundant for Congress to have merely rewritten the antitrust laws in RICO.

One court has defined "enterprise injury" as when "a civil RICO defendant's ability to harm the plaintiff is enhanced by the infusion of money from a pattern of racketeering activity into the enterprise." *Landmark Sav. & Loan v. Rhoades,* 527 F.Supp. at 209. This formulation is sensible when the "pattern of racketeering activity" generates income directly, but it is nonoperational in a situation where the predicate acts of racketeering are not income producing. Given the variety of acts which qualify as "racketeering" under 18 U.S.C. § 1961(1), to attempt to fashion a definition which would apply to all situations is unwarranted at this time.

Two principles emerge as guidelines for future determinations. First, the injury should be proximately caused by the "pattern of racketeering activity." This requirement insures that the injury is causally related to the acts of the "person" who is held liable under RICO. Second, if the injury is one for which available remedies already exist, an analysis of the legislative history must be performed to determine whether Congress intended that RICO supplant the existing remedy.

2. Victims of "enterprise injury" under Section 1962(b) would also have standing to sue if their injury bears the necessary relationship to the "pattern of racketeering activity."

eering activity consisting of securities fraud, mail fraud, or wire fraud.

▐ I agree with those courts which have stated that the there is no evidence that Congress intended such a drastic alteration in the civil remedies available to victims of garden variety fraud. *See Adair v. Hunt Int'l Resources Corp.*, 526 F.Supp. 736, 747 (N.D.Ill.1981); *Johnsen v. Rogers*, 551 F.Supp. at 285–286; *Harper v. New Japan Securities Intern., Inc.*, 545 F.Supp. at 1007–1008. It is incumbent upon courts, especially in civil RICO actions where the restraint of prosecutorial discretion is not present, to scrutinize claims to insure that the statute is not applied to contexts outside those intended by Congress. *Moss v. Morgan Stanley Inc.*, 553 F.Supp. 1347, 1359 (S.D.N.Y.1983).

Nonetheless, I cannot follow those courts which have held that victims of "predicate act injury" should never have RICO standing. Congress intended that RICO apply to criminal, as well as legitimate, "enterprises" because to do so is "to deal with the problem at its very source." *United States v. Turkette*, 452 U.S. 576, 591, 101 S.Ct. 2524, 2533, 69 L.Ed.2d 246 (1981). If RICO standing is denied to victims of "predicate act injury" in the criminal "enterprise" situation, then the potential plaintiffs are limited to other racketeers who are harmed by the RICO enterprise's unfriendly conduct. For example, if the RICO enterprise is a drug smuggling ring, potential "enterprise injury" plaintiffs are other racketeers in the drug smuggling business. To construe the statute so to leave enforcement of civil RICO to such

plaintiffs is an absurd result which must be avoided. *Id.* at 580, 101 S.Ct. at 2527.

▐ Given these conflicting policies, I believe that the proper solution is to allow victims of "predicate act injury" to sue under Sections 1962(a) and 1962(c) when the associated "enterprise" is organized solely for criminal purposes.[3] In addition to reconciling this conflict with minimal damage to either principle, this holding is consonant with Congress' intent that RICO be a significant tool in the fight against organized crime. Congress justifiably had difficulty focusing RICO on organized crime in a Constitutionally acceptable fashion. *See* Note, *Civil RICO: The Temptation and Impropriety of Judicial Restriction*, 95 Harv.L.Rev. 1101, 1107–1108 (1982). Giving standing to people who are victims of racketeering activity perpetrated by persons associated with an "enterprise" which is organized solely for criminal purposes is perhaps the most direct way to combat organized crime.[4]

In addition to the general effect of organized crime on our economic system, a primary concern of Congress in enacting RICO was to eliminate the infiltration of organized crime into legitimate businesses. RICO's statement of findings states that organized crime's "money and power are increasingly used to infiltrate and corrupt legitimate business and labor unions ...." 84 Stat. 923. *See also United States v. Turkette*, 452 U.S. at 591 n. 13, 101 S.Ct. at 2532 n. 13.

However, it is difficult to envision an "infiltration injury" for which an adequate remedy does not already exist. The law of fiduciary obligations to minority sharehold-

---

**3.** Most courts which have considered the question of standing under RICO have framed the alternatives as either "predicate act injury" or "enterprise injury." There is nothing in the statute that requires such an either/or approach. The objective is to determine which types of injuries RICO was intended to redress. Given the complexity of the statute and its purpose, it is unwise for courts to restrict themselves with self-imposed, rigid analytical frameworks.

**4.** Victims of "predicate act injury" under Section 1962(b) would *not* have standing to sue when the affiliated "enterprise" is organized solely for criminal purposes. Section 1962(b) proscribes the acquisition of an interest of an "enterprise" through a "pattern of racketeering activity." 18 U.S.C. § 1962(b). In this situation, the "predicate act injury" plaintiffs are racketeers themselves who have lost control of their criminal organization to other racketeers. To allow one racketeer to sue another under RICO does not further the statute's objective of eradicating organized crime.

ers and employment law protect the shareholders and employees of an "enterprise" which is infiltrated under Section 1962(a). To give RICO standing to all victims of "infiltration injury" would enable a plaintiff to transform a claim for breach of fiduciary duty into a RICO treble damage claim if he can show that the defendant procured his investment capital through an act that qualifies as "racketeering" under 18 U.S.C. § 1961(1), such as securities fraud.

I do not believe that Congress intended to give RICO standing to victims of "infiltration injury" because there is no evidence of an intent to so drastically modify these traditional remedies. *But see Dakis on Behalf of Dakis Pension Plan v. Chapman*, 574 F.Supp. 757 (N.D.Cal.1983). The fact that RICO applies to criminal enterprises does not undermine this holding. In fact, the absurdity identified earlier would be exacerbated if victims of "infiltration injury" were given RICO standing in the criminal "enterprise" situation.[5]

In summary, plaintiffs who have suffered "enterprise injury" always have standing to sue under Sections 1962(a) and 1962(c). Victims of "predicate act injury" have standing only when the associated "enterprise" is organized solely for criminal purposes. Complainants who allege only "infiltration injury" never have standing.[6]

In the case at bar, it is clear that plaintiffs have failed to allege facts sufficient to show they have RICO standing. They have alleged injury only by the predicate acts of racketeering and there is no allega-

tion that a criminal RICO enterprise is involved. Moreover, Dean Witter could not be that enterprise because it is not organized solely for criminal purposes.

Given this analysis, I am hesitant to grant leave to amend because it appears impossible for plaintiffs to gain RICO standing under the facts of this case. Nevertheless, the potential for joinder of additional defendants and the flexibility of RICO compels such an order.

### E. Claims for Attorneys' Fees and Punitive Damages

As part of their prayer for relief in claims one, two, three, seven, and eight, plaintiffs seek attorneys' fees and punitive damages. Defendant's motion to strike these claims is hereby GRANTED. Plaintiffs admit that attorney's fees and punitive damages generally are not available under Section 12(2) of the Securities Act of 1933 and the Commodities Exchange Act. Plaintiff's Brief in Opposition to Motion to Dismiss at 17, *Lopez v. Dean Witter Reynolds, Inc.*, No. C 83–20172 WAI. I concur with this admission. *See Aronson v. TPO, Inc.*, 410 F.Supp. 1375, 1380 (S.D.N.Y. 1976); 7 U.S.C. § 25(a)(2).

### F. Claims for Trading Losses

Plaintiffs seek compensation for trading losses, in addition to commissions earned, in claims one, two, and three for churning. Trading losses are defined as the decline in the value of an investor's portfolio independent of commissions and interest paid. *Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 326 (5th Cir.1981).

---

**5.** This analysis applies equally to suits under Section 1962(b).

**6.** Some courts have limited RICO by requiring an allegation of a link to organized crime. *See e.g. Hokama v. E.F. Hutton & Co., Inc.*, 566 F.Supp. 636, 642–643 (C.D.Cal.1983). However, most courts, including every circuit to consider the question, have rejected this requirement. *See Moss v. Morgan Stanley*, 719 F.2d 5, 21 (2d Cir.1983); *Schacht v. Brown*, 711 F.2d 1343, 1353–1356 (7th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 508, 509, 78 L.Ed.2d 698 (1983); *Bennett v. Berg*, 685 F.2d 1053, 1063–1064 (8th Cir. 1982). The Ninth Circuit has held that the pros-

ecutor need not prove that the defendant has organized crime connections in criminal prosecutions. *United States v. Campanale*, 518 F.2d 352, 363 (9th Cir.1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976). The reasoning behind the rejection of an organized crime requirement is that Congress considered and rejected such a proposal because of Constitutional problems. *See* Note, *Civil RICO: The Temptation and Impropriety of Judicial Restriction*, 95 Harv.L.Rev. 1101, 1107–1108 (1982). Accordingly, this court refuses to require such an allegation.

Defendant's motion to strike the prayer for trading losses is hereby GRANTED.

The law in the Ninth Circuit is that absent an assertion that the allegedly churned securities and commodities futures contracts were also unsuitable for the plaintiff, recoverable damages are limited to commissions and interest paid by plaintiff. *Hecht v. Harris, Upham & Co.*, 430 F.2d 1202, 1211 (9th Cir.1970); *Mihara v. Dean Witter & Co.*, 619 F.2d 814, 826 (9th Cir.1980). Plaintiffs' complaint alleges only churning at this time.

### G. *Improper Joinder of Plaintiffs*

Defendant's motion to sever plaintiffs is DENIED without prejudice to a subsequent motion to bifurcate for trial pursuant to Fed.R.Civ.P. 42(b).