**Kevin GRIFFIN, et al., Plaintiffs,**

**v.**

**O'NEAL, JONES & FELDMAN, INC., et al., Defendants.**

**No. C-1-84-1228.**

United States District Court, S.D. Ohio, W.D.

March 14, 1985.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Stanley M. Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, Ohio, for plaintiffs.

James Q. Doran, Cincinnati, Ohio, Charles R. Janes, Trial Atty., Knepper, White, Arter & Hadden, Columbus, Ohio, for defendants; Michael R. Gallagher, Gallagher, Sharp, Fulton & Norman, Cleveland, Ohio, of counsel.

## OPINION AND ORDER GRANTING MOTION TO DISMISS

SPIEGEL, District Judge:

This matter came on for consideration of the motion to dismiss filed by defendants Carter-Glogau Laboratories, Inc. and Revco D.S., Inc. (doc. 6). A brief in opposition has been filed by plaintiffs (doc. 11), to which defendants have replied (doc. 13). For the reasons set forth below, we hereby Order that counts four and six be stricken from plaintiffs' Complaint and, consequently, that plaintiffs' Complaint be dismissed in its entirety, as we are without jurisdiction to hear their case.

Plaintiffs Kevin and Maureen Griffin, individually, and as Next Friends and Guardians of their minor daughter Meghan, seek

recovery from all defendants based on events that had their inception when Meghan was born prematurely at Good Samaritan Hospital in Cincinnati, Ohio. They sue for damages for themselves and for Meghan that stem from injuries suffered by her as a result of the administering of E-Ferol Aqueous Solution to her for an extended period of time following her birth. Plaintiffs assert seven causes of action: negligence; breach of the warranty of merchantibility and fitness for an intended purpose; strict liability; violation of the Federal Food, Drug and Cosmetic Act (FDCA); fraud; violation of Title IX of Organized Crime Control Act (hereinafter the Racketeer Influenced and Corrupt Organizations Act or RICO); and willful and wanton conduct. There exists no diversity of citizenship between the parties. Rather, plaintiffs claim jurisdiction by way of 28 U.S.C. § 1331, citing their allegations of liability grounded on the FDCA and RICO, both federal statutes, and upon the doctrines of pendent and ancillary jurisdiction.

Through their motion to dismiss, defendants challenge sufficiency of plaintiffs' federal claims under the FDCA and RICO, arguing that no private cause of action can be implied under the former and that the facts of this case are inapplicable to the latter. If defendants are correct on both counts, we would lack federal question or "arising under" jurisdiction. Absent diversity of citizenship, this case would warrant dismissal, thus leaving plaintiffs to their remedies in state court.

Specifically, pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P., defendants move for an order striking counts four (FDCA) and six (RICO) of plaintiffs' Complaint and then for dismissal of plaintiffs' Complaint for lack of subject matter jurisdiction. The standard of review by which we are bound has been set forth in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss ought not to be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. at 101–102 (footnote omitted). In addition, we must

"accept as true all the well-pled allegations in the complaint under attack." *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir.1983); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). It is within this framework that we evaluate defendants' motion.

I

■ The Federal Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. § 301 *et seq.,* is a public protection statute, one designed, among other things, to keep misbranded and/or adulterated articles from entering interstate commerce. *See United States v. Walsh,* 331 U.S. 432, 434, 67 S.Ct. 1283, 1284, 91 L.Ed. 1585 (1947). Congress has provided criminal penalties to be imposed on those found to violate the prohibited acts set forth in § 331. It is clear from the face of the statute that no civil private right of action exists. Notwithstanding this omission, plaintiffs ask this Court to imply a cause of action because "there is no language contained in the statute that *prohibits* a civil claim" (doc. 11, p. 4, emphasis ours). In response, defendants represent that no court considering the issue has ever implied a civil cause of action under the FDCA and that we ought to rule similarly.

Our research confirms, and plaintiffs do not dispute, defendants' contention that there is no legal precedent supporting plaintiffs' theory that private citizens may bring suit against alleged violators of the FDCA. *See, e.g., Pacific Trading Co. v. Wilson and Co., Inc.,* 547 F.2d 367 (7th Cir.1976); *National Women's Health Network, Inc. v. A.H. Robins Co., Inc.,* 545 F.Supp. 1177 (D.Mass.1982); *Keil v. Eli Lilly and Co.,* 490 F.Supp. 479 (E.D.Mich. 1980); *Gelley v. Astra Pharmaceutical Products, Inc.,* 466 F.Supp. 182 (D.Minn.), *aff'd on other grounds,* 610 F.2d 558 (8th Cir.1979). While it is true that none of these cases serve as binding precedent upon us, we are inclined to follow them. In particular, we believe that Judge Nelson's treatment of the question presented is a

correct application of the legal issues at hand. *See National Women's Health Network,* 545 F.Supp. at 1178–80.

Assuming we were not wont to adopt the findings of the Seventh Circuit and the district courts listed above, we could undertake an independent analysis of whether we ought to imply a private right of action under the FDCA pursuant to *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and its progeny. In *Cort,* of course, the Supreme Court teaches that four factors merit attention when divining a private remedy: (1) did the legislature intend for plaintiffs to be within the protected class; (2) did the legislature intend, in any fashion, to create a private cause of action; (3) would the legislative purpose be compromised if a private right were implied; and (4) would an implied right under federal law interfere with a state's province to regulate a particular area? *Id.* at 78, 95 S.Ct. at 2088. *See also Cannon v. University of Chicago,* 441 U.S. 677, 689–709, 99 S.Ct. 1946, 1953–1964, 60 L.Ed.2d 560 (1979). These four factors, however, do not command equal weight. Rather, the intent of Congress looms as the all-important inquiry. *See Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 104 S.Ct. 831, 839, 78 L.Ed.2d 645 (1984); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 377, 102 S.Ct. 1825, 1838, 72 L.Ed.2d 182 (1982); *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 13, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Northwest Airlines, Inc. v. Transport Workers Union of America,* 451 U.S. 77, 91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 23–24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). As a result of these recent rulings, it is apparent that the Supreme Court intends to limit the availability of private causes of action,

a trend recognized by our parent circuit. *See, e.g., Rauchman v. Mobil Corp.,* 739 F.2d 205, 207 (6th Cir.1984); *Howard v. Pierce,* 738 F.2d 722, 731 (6th Cir.1984) (Engel, J., dissenting).[1]

In support of the position that the FDCA permits a private civil cause of action, plaintiffs proffer policy arguments. They maintain that the Food and Drug Administration (FDA) is overworked and underfunded; consequently, society is exposed to unapproved—and presumably unsafe—drugs. Plaintiffs present their case as the "perfect" example of the FDA's impotence to afford protection to citizens using licit drugs. They allege that defendants

> marketed more than fifty (50) unapproved drugs despite government warnings... [;] improperly marketed more than a dozen other drugs in unapproved strengths and sizes as well as thirty-four (34) vitamin and mineral products... [;] [and received] sixteen (16) letters between 1976 and 1981 informing [it that the FDA] considered some of its products unsafe or ineffective,

(doc. 11, p. 5), all without FDA sanction. Plaintiffs characterize the FDA's inaction as a helpless inability instead of a deliberate unwillingness to act. Naturally defendants have a differing view of the significance of these facts, assuming, for argument's sake, that they are true. We need not resolve said conflict, however. In essence, plaintiffs ask us to imply a private remedy because, in so doing, we only would be furthering Congress's purpose in enacting the FDCA—that is, preventing introduction of misbranded and/or adulterated drugs into the stream of commerce. Plaintiffs thus urge that we focus on Factor Three of the *Cort v. Ash* analysis. But because the recent relevant Supreme Court case law forbids us from considering *Cort's* third factor before we are satisfied that we have met the second, we cannot

---

**1.** We note that both Justice Stevens and Justice Blackmun bemoan the evolution of the *Cort v. Ash* multifactor test into a single-step touchstone that pivots upon the ever elusive concept of Congressional intent. *See Middlesex County,* 453 U.S. at 25, 101 S.Ct. at 2629 (Stevens, J., concurring in part and dissenting in part).

adopt the reasoning urged upon us by plaintiffs.[2]

We have established that the plain language of the FDCA implies no civil private right of action. Neither plaintiffs nor defendants cite any legislative history to the Court. Judge Nelson, though, in *National Women's Health Network*, indicates that a rejected version of the FDCA would have incorporated a private right of action for damages. 545 F.Supp. at 1179–80. Given this legislative indication, albeit indirect, and the actual statutory language, we do not hesitate in concluding that Congress intended no private remedy under the FDCA.

There being "no set of facts" entitling plaintiffs to relief on their claim grounded on a violation of the FDCA, defendants' motion to dismiss is granted in part and plaintiffs' fourth cause of action is Ordered stricken from the Complaint.

## II

Plaintiffs' Complaint also claims jurisdiction arising under Title IX of the Organized Crime Control Act of 1970, the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* Defendants maintain that plaintiffs' RICO cause of action is wrought with infirmities and cannot stand; generally, they state that plaintiffs have no cognizable RICO injury and that plaintiffs have not alleged the necessary enterprise. After setting forth the pertinent statutory sections, we will proceed to discuss the questions defendants present.

RICO has both a criminal and civil component. Its civil remedy, the one sought by plaintiffs herein, reads as follows:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter ... shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

*Id.* § 1964(c). Section 1962(c)[3] is reproduced below:

It shall be unlawful for any person employed by or associated with any enterprise engage in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

These definitions are relevant to the statute now under scrutiny:

(1) "racketeering activity" means ... (B) any act which is indictable under any of the following provisions of title 1, United States Code: ... section 1341 (relating to mail fraud);

(3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property;

(4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeer-

2. Even assuming we could have mustered the necessary Congressional intent and thus met Factor Two in the *Cort* analysis, Factor One would present a problem. Laws enacted for the benefit of the general public stand apart from those designed to focus on and protect only indentifiable members of a protected class. The Supreme Court has made clear that, in the former, private causes of action ought not to be implied. *See Cannon*, 441 U.S. at 690–93, 99 S.Ct. at 1954–55; *Howard*, 738 F.2d at 725–26. We read the FDCA as a statute enacted to protect our citizenry at large. On balance, therefore, we conclude that plaintiffs fall far short of satisfying the test in *Cort*, as modified or not.

Furthermore, we observe with interest that part of the Sixth Circuit's reasoning that recognizes whether other courts have implied private remedies with respect to particular federal statutes. *See, e.g., Jennings v. Alexander*, 715 F.2d 1036, 1040 (6th Cir.1983); *Chartwell Communications Group v. Westbrook*, 637 F.2d 459, 466 (6th Cir.1980). Under this "standard," if it can be so labelled, and with our previous string citation in mind, plaintiffs in the instant case surely would fail.

3. Although plaintiffs do not reference specifically § 1962(c) in their Complaint, of the four subsections available, (c) strikes us as most appropriate in light of plaintiffs' allegations.

ing activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years.

*Id.* § 1961(1), (3), (4), (5).

The Sixth Circuit has broken down § 1962(c) into this list of elements:

[A person]

(1) engaging in an enterprise,

(2) affecting interstate commerce,

(3) conducted through a pattern of racketeering, and

(4) involving two or more statutorily-named racketeering crimes.

*See United States v. Sutton,* 642 F.2d 1001, 1008 (6th Cir.1980), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 995 (1981). We will use these elements to order our examination of defendants' contentions.

Defendants quarrel not with the notion that they each, as corporations, may be considered a "person." They do dispute, however, that they can be considered simultaneously a "person" and an "enterprise." Their reading of the statute contemplates interaction of a "person" with an "enterprise," but as completely separate, conceptually discrete entities.

Defendants' position parrots that taken by this Court in *Bays v. Hunter Savings Ass'n,* 539 F.Supp. 1020, 1023–24 (S.D.Ohio 1982), wherein we relied on, among other cases, *Sutton* to conclude that the "person" must be distinct from the "enterprise." We refer the parties to our Opinion in that case for a full-blown analysis. Upon examination, we glean nothing from plaintiffs' Complaint from which we can infer that there exists a "person" apart from an "enterprise;" in fact, we read plaintiffs' memorandum in opposition to state as much (*see* doc. 11, p. 12).

Not every court considering the issue has ruled as we did in *Bays.* See, e.g., *United States v. Hartley,* 678 F.2d 961, 986 (11th Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983); *United States v. Benny,* 559 F.Supp. 264 (N.D.Cal.1983).[4] But a sufficient number has approved and adopted our reasoning,[5] and we are satisfied that, until a contrary decision issues from our parent circuit or the Supreme Court, our thinking remains sound. The fact that plaintiffs do not—and presumably cannot—allege a "person" separate from an "enterprise" impedes them from setting forth all the elements neces-

**4.** Commonly cases such as *Hartley* and *Benny* that hold that a "person" and an "enterprise" can coincide in identity are criminal rather than civil. *See Saine v. A.I.A., Inc.,* 582 F.Supp. 1299, 1306 n. 7 (D.Colo.1984). *But see United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). And we note that Judge Peckham in *Benny* is not opposed completely to our viewpoint as he states, in dictum, that "[t]he argument against identification of defendant and enterprise might be viable where [as here and in *Bays* ] a corporate defendant is involved." 559 F.Supp. at 268.

**5.** *See Lopez v. Dean Witter Reynolds, Inc.,* 591 F.Supp. 581, 585–86 (N.D.Cal.1984); *Saine v. A.I.A., Inc.,* 582 F.Supp. 1299, 1306–07 (D.Colo. 1984); *Kaufman v. Chase Manhattan Bank, N.A.,* 581 F.Supp. 350, 357–58 (S.D.N.Y.1984); *Willamette Savings & Loan v. Blake & Neal Finance Co.,* 577 F.Supp. 1415, 1426–27 (D.Or. 1984); *D & G Enterprises v. Continental Illinois National Bank and Trust Co.,* 574 F.Supp. 263, 270 (N.D.Ill.1983); *Barker v. Underwriters at Lloyd's, London,* 564 F.Supp. 352, 356 (E.D. Mich.1983).

At this point we are obliged to mention that the Seventh Circuit apparently takes exception to our reasoning in *Bays.* In a case scheduled for argument before the Supreme Court (*see infra* note 6), Judge Cudahy, writing for the panel, determined that the "person" must be distinct from the "enterprise," unless the "corporation[-enterprise] is also a perpetrator." *Haroco, Inc. v. American National Bank and Trust Co.,* 747 F.2d 384, 402 (7th Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 902, 83 L.Ed.2d 917 (1985). Here, obviously, plaintiffs allege that the defendant corporations are "perpetrators." While citation to *Haroco* is absent from their brief in opposition, we trust they would seek the benefit of that court's favorable ruling.

Having considered the Seventh Circuit's analysis in which subsection (a) of § 1962 is read together with subsection (c), we indicate only our respectful disagreement. From our reading *United States Law Week*'s list of questions presented on certiorari, the person/enterprise identity issue will not be considered on appeal. Therefore, we are comfortable in so grounding our decision in the instant case.

sary under § 1962(c). Absent a proper allegation of a § 1962(c) violation, no recovery may be had under § 1964. *See Bays,* 539 F.Supp. at 1023. Under the *Conley v. Gibson* standard, then, plaintiffs' sixth cause of action, in addition to the fourth, must be stricken from their Complaint.[6]

### III

Our ruling today strikes plaintiffs' fourth and sixth causes of action from their Complaint. These were the causes of actions on which federal jurisdiction was based; those claims remaining are state claims and were pendent to those dismissed. Accordingly, on the principles set forth in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), plaintiffs' causes of action must be litigated in state court. As we are without subject matter jurisdiction in this case, it is hereby dismissed.

SO ORDERED.

---

**6.** While we rule based on the person/enterprise identity issue, we recognize that defendants proffer alternative grounds in derogation of plaintiffs' RICO count. Defendants assert additionally, and urge us to agree, that plaintiffs have no cognizable RICO injury as required by § 1964(c), for one or both of these arguments. First, they claim that plaintiffs must demonstrate they have suffered harm over and above that incident to the predicate offense. Second, they contend that plaintiffs' damages, properly characterized, actually are no more than the accoutrements of a personal injury suit and thus are not recoverable under the "business or property" injury standard set forth in RICO.

 For reasons that we hope will become evident in the balance of this footnote, we make no ruling on the additional grounds defendants raise. Further, we take this opportunity to clarify on what other grounds we do not resolve this matter. In their papers the parties squabble over whether the fact that there has been no allegation of a link between defendants and organized crime ought to have a bearing on our decision. While this issue has been the topic of much debate, *see, e.g., Lopez,* 591 F.Supp. at 589 n. 6, we recognize that, in a recent case, the Sixth Circuit declined to "address the issue of whether a business entity must be affiliated with organized crime in order to be liable for damages in a private civil RICO action." *Bender v. Southland Corp.,* 749 F.2d 1205 at 1216 n. 9 (6th Cir. 1984). As an organized crime link really is not pertinent to our ruling with respect to the deficiencies identified in plaintiffs' RICO cause of action, for the record we state that said link—or lack thereof—played no part in our deliberations.

 To suggest that the scope of civil RICO is a current legal issue would be an absurd understatement. As expected, our research has unturned scores of cases relevant to the question of how far the statute should be construed to reach. The Supreme Court itself will be deciding a conflict that has arisen between the Second and Seventh Circuits, as certiorari has been granted in the cases of *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 741 F.2d 482 (2d Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985) and *Haroco, Inc. v. American National Bank and Trust Co.,* 747 F.2d 384 (7th Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 902, 83 L.Ed.2d 917 (1985). (*Sedima* is part of a trilogy of cases decided by the Second Circuit, and the only one in which certiorari has been granted.) The other two cases are *Bankers Trust Co. v. Rhoades,* 741 F.2d 511 (2d Cir.), *petition for cert. filed,* 53 U.S. L.W. 3367 (U.S. Oct. 24, 1984) (No. 84–657) and *Furman v. Cirrito,* 741 F.2d 524 (2d Cir. 1984).

 Of course we cannot predict which questions of law the Supreme Court will chose to resolve. Those presented include whether conviction of a predicate act listed in § 1961(1) is a prerequisite to civil suits by a private litigant under § 1964(c) and whether a civil RICO plaintiff must prove injury to business or property beyond that resulting from the underlying acts of racketeering, a notion otherwise elusively dubbed proof of "racketeering enterprise injury." Possibly the Justices will determine whether an organized crime nexus is the sine qua non of recovering civil damages under RICO. Whatever the breadth of the inquiry the Court elects to take, however, its opinion will provide lower courts with welcome answers to many of these troubling issues. As we are able to resolve the matter presently before us on much narrower grounds—grounds that presumably will not be addressed at oral argument before the Court—and given that much needed guidance as to the reach of civil RICO will be forthcoming, we think it prudent for us not to rule on defendants' alternative grounds to dismiss plaintiffs' sixth cause of action. On this note, then, we conclude our discussion.